Derek A. Newman, State Bar No. 190467
derek@newmanlaw.com
NEWMAN DU WORS LLP
100 Wilshire Boulevard, Suite 950
Santa Monica, CA 90401
Telephone:  (310) 359-8200
Facsimile:   (310) 359-8190

John Du Wors, State Bar No. 233913
duwors@newmanlaw.com
Derek Linke, *pro hac vice* to be filed
linke@newmanlaw.com
NEWMAN DU WORS LLP
1201 Third Avenue, Suite 1600
Seattle, WA 98101
Telephone:  (206) 274-2800
Facsimile:   (206) 274-2801

Attorneys for Plaintiff
FUTURE ADS LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| FUTURE ADS LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN L. GILLMAN, an individual, and OMNIANGLE TECHNOLOGIES, LLC, a Florida limited liability company,<br><br>Defendants. | Case No  **SACV13-905 AN**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

i
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

I.  NATURE OF THE CASE ........................................................................... 1

II.  JURISDICTION AND VENUE ................................................................. 2

III.  PARTIES .................................................................................................. 3

IV.  FACTUAL BACKGROUND ................................................................... 4

    A.  Future Ads operates an online-advertising platform. ........................... 4

    B.  Lead generators advertise via Future Ads' App. ................................... 5

    C.  Schools are under scrutiny for disclosures in their marketing
    practices ................................................................................................. 5

    D.  Defendants prey on schools' concerns about complying with
    advertising regulations in order to sell their "compliance"
    services. ................................................................................................. 6

    E.  Defendants provide "compliance" reports to schools which
    falsely identify ads displayed by Future Ads App as "potential
    violations" and "adware." ...................................................................... 7

    F.  Defendants' misleading reports specifically referring to ads
    displayed by Future Ads' App as "adware" and "potential
    violations" have caused substantial harm to Future Ads. .................... 9

V.  FIRST CAUSE OF ACTION
TRADE LIBEL ....................................................................................... 11

VI.  SECOND CAUSE OF ACTION
INTENTIONAL INTERFERENCE
WITH CONTRACTUAL RELATIONS ................................................. 12

VII.  THIRD CAUSE OF ACTION
INTENTIONAL INTERFERENCE
WITH PROSPECTIVE ECONOMIC ADVANTAGE ............................ 13

VIII.  FOURTH CAUSE OF ACTION
DEFAMATION (PER SE) ....................................................................... 14

IX.  FIFTH CAUSE OF ACTION
DEFAMATION (PER QUOD) ............................................................... 15

X.  SIXTH CAUSE OF ACTION UNFAIR COMPETITION
CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.* ................................ 16

XI.  RELIEF REQUESTED ........................................................................... 17

XII.  JURY DEMAND ..................................................................................... 19

Plaintiff FUTURE ADS LLC, a California limited liability company, hereby alleges for its complaint against Defendants JONATHAN L. GILLMAN, an individual, and OMNIANGLE TECHNOLOGIES, LLC, a Florida limited liability company, on personal knowledge as to its own activities, and on information and belief as to the activities of others, as follows:

## I.    NATURE OF THE CASE

1.    Future Ads operates an online advertising platform. Its advertiser customers include "lead generators" which provide consumers with information about education opportunities. In response, an interested consumer may submit to the lead generator contact information and other details about his or her education interests. The lead generator then forwards the submitted information (known as a "lead") to schools matching the consumer's criteria. The schools pay the lead generator for the lead.

2.    Defendant Jonathan Gillman operates a consulting company called Omniangle which purports to advise schools about "compliance with state and federal regulations." But Defendants are not lawyers. Rather, their business is based on knowing and intentional use of scare tactics to market and sell their services.

3.    So in order to sell advice to schools, regarding "compliance with state and federal regulations," Defendants fabricate alleged "potential violations" to create the appearance Defendants are providing value. In truth, Defendants are engaged in the unauthorized practice of law and provide worthless advice to schools about issues that do not matter.

4.    Among other false statements and misrepresentations, Defendants specifically refer to ads displayed via Future Ads' online advertising platform as "adware" and as "potential violations." The implication is that the use of Future Ads' advertising platform is unlawful or otherwise improper—which is not true.

5.    As a result of Defendants' intentional false statements and

1   misrepresentations, some schools have instructed lead generators not to advertise
2   with Future Ads, including schools that have received high-quality leads from
3   Future Ads for years. Consequently, lead generators have reduced their advertising
4   with Future Ads, and Future Ads has lost substantial revenue.

5       6.      Future Ads repeatedly tried to contact Defendants about the harm their
6   practices are causing. But Defendants' outside attorney advised Future Ads that
7   Defendants would not change their practices, nor would Gillman or any Omniangle
8   employee speak directly with Future Ads.

9       7.      Since then, Defendants have continued to engage in the conduct
10  described in this Complaint and Future Ads continues to suffer harm. Because of
11  Defendants' refusal to communicate meaningfully with Future Ads or change their
12  practices, Future Ads' had no alternative but to file this lawsuit.

13      8.      Future Ads is suing Defendants to enjoin them from (a) continuing to
14  interfere with Future Ads' business relationships and (b) disparaging Future Ads'
15  business. Future Ads also seeks to recover damages.

16                      **II.   JURISDICTION AND VENUE**

17      9.      This Court has original subject-matter jurisdiction over this action
18  under 28 U.S.C. § 1332(a) because the parties are diverse in citizenship and the
19  amount in controversy exceeds $75,000.

20      10.     This Court has specific personal jurisdiction over Defendants because
21  they intentionally engaged in transactions in California which gave rise to the harm
22  that Future Ads sues to remedy. For example, Defendants intentionally made
23  misrepresentations to schools in California about Future Ads. These intentional
24  misrepresentations caused lead generators in California to alter their relationships
25  with Future Ads. In addition, Defendants intentionally targeted harm toward Future
26  Ads knowing that Future Ads is located in California.

27      11.     This Court also has general personal jurisdiction over Defendants
28  because they have systematic and continuous contacts with California. Defendants

1   maintain customer relationships in California, regularly market their services to

2   potential customers in California, and frequently meet with actual and potential

3   customers based in California.

4       12.    Venue is proper in the Southern Division of the United States District

5   Court for the Central District of California under 28 U.S.C. § 1391(b) because this

6   is a judicial district in which a substantial part of the events or omissions giving

7   rise to these claims occurred, because the Defendants are subject to personal

8   jurisdiction in this judicial district, and because Future Ads suffered the harm

9   caused by Defendants' activities at Future Ads' principal place of business in

10  Irvine, California.

11                          **III.   PARTIES**

12      13.    Plaintiff FUTURE ADS LLC is a California limited liability company

13  with its principal business address at 2010 Main Street, Suite 900, Irvine,

14  California.

15      14.    Defendant JONATHAN L. GILLMAN is a Florida resident. Gillman

16  resides at 3918 Osprey Ct., Weston, Florida.

17      15.    Defendant OMNIANGLE TECHNOLOGIES, LLC is a Florida

18  limited liability company with its principal place of business at 2645 Executive

19  Park Dr., Suite 614, Weston, Florida. Gillman is the sole manager and member of

20  Omniangle.

21      16.    Each defendant purposefully aided and abetted the actions of the other

22  defendant as described below. Each defendant worked in concert with the other

23  defendant, had knowledge of the other defendant's actions, provided assistance to

24  the other defendant, and benefitted from those actions. Each defendant was the

25  agent of the other defendant and—in doing the things alleged below—was acting

26  within the course and scope of that agency and with the other defendant's

27  permission and consent.

28

## IV.   FACTUAL BACKGROUND

**A.   Future Ads operates an online-advertising platform.**

17.   Future Ads operates an online-advertising platform which provides advertisers, the ability to connect with interested Internet users (*i.e.* consumers).

18.   Users visit online games that Future Ads or its subsidiaries offer on the World Wide Web. For example, Future Ads' subsidiary offers the ArcadeWeb website located at <http://www.arcadeweb.com> with hundreds of different games. Users do not pay to play games.

19.   Users are invited to download and install Future Ads' web-browser plug-in application software (the "App") in order to play premium and tournament games. Future Ads does not charge users to download or use the App or play games, including premium and tournament games.

20.   Before the App is installed on a user's computer, Future Ads presents all of the App's material terms to the user, including specifically that the App will display ads while the user browses the web. A user must expressly confirm that he or she wishes to proceed multiple times before the App can install.

21.   Once installed, the App displays ads to users while browsing the Internet. In exchange, the user receives free access to certain premium and tournament games. The App does not collect any personally-identifying information about users.

22.   Future Ads provides users with clear and conspicuous instructions for removing the App. The App may be uninstalled at any time using the standard Windows "Add or Remove Programs" tool. Future Ads employs two full-time customer-service representatives available to, among other things, assist users with App uninstallation.

23.   When a user is interested in an ad displayed via the App, the user may submit information that will be used for a lead, or the user may purchase goods or services from the advertiser.

**B.** **Lead generators advertise via Future Ads' App.**

24. Future Ads does not create or design any advertising content. Rather Future Ads' advertiser customers provide the ads.

25. Those customers include "lead generators" in the business of connecting consumers looking for goods or services with companies that provide those goods or services. When a user clicks on a lead generator's ad, the user is directed to the lead generator's website and provided with information about potential opportunities from one or more companies. Consumers provide information (for example, contact information) to a lead generator when interested in a company's goods or services. The lead generator forwards that information (a "lead") to the company in exchange for a fee.

26. Future Ads generates a major portion of its revenue from lead generators which forward leads to schools.

27. The schools receiving leads originating from Future Ads advertising include Strayer Education, Inc., DeVry Inc., Grand Canyon University, Inc., University of Phoenix, Inc., Education Management Corp., and Corinthian Colleges, Inc.

**C.** **Schools are under scrutiny for disclosures in their marketing practices.**

28. Recently, regulators and the public have scrutinized schools about whether their marketing properly discloses the amount of debt a student may incur to complete the education program and reasonable post-graduation job prospects.

29. For example, the U.S. Department of Education passed regulations prohibiting offering "educational programs, marketing, advertising, recruiting or admissions services" containing a "substantial misrepresentation regarding the eligible institution, including about the nature of its educational program, its financial charges, or the employability of its graduates."[1] The prohibition applies

[1] 34 C.F.R. § 668.71(a).

broadly to "any advertising, promotional materials, or in the marketing or sale of courses or programs of instruction offered by the [educational] institution."[2]

30.     Those regulations provide steep consequences for engaging in "substantial misrepresentation." For example, a violation could result in revoked eligibility for federal student-aid programs[3] or fines and penalties against the school and against certain individuals with control over the school.[4]

31.     Future Ads has no involvement in the substance of any ads—whether for schools or any other product or service—because it only distributes ads. Future Ads does not create or develop ad content, nor does it provide advertised products. So Future Ads cannot contribute to the marketing content that could give rise to a violation.

**D.   Defendants prey on schools' concerns about complying with advertising regulations in order to sell their "compliance" services.**

32.     Omniangle describes itself as a "business intelligence and information security firm." Omniangle's federal trademark registration describes its services as "reviewing standards and practices to ensure compliance with state and federal regulations."[5]

33.     Omniangle's primary business appears to be providing advertising-compliance review services to marketers, including schools that buy leads.

34.     But Gillman is not a lawyer and Omniangle does not employ a lawyer.

35.     Instead, Gillman has developed a business model based on the knowing and intentional use of scare tactics and unlicensed legal advice to convince companies to pay him.

36.     In order to justify charging schools for compliance advice, Defendants

[2] *Id.*
[3] *Id.*
[4] *Id.*; 34 C.F.R. § 668.92
[5] *See* U.S. Trademark Registration No. 3,844,560.

1  fabricate alleged "violations" to give the appearance Defendants are providing
2  value.

3        37.    In July 2010, Gillman gave a presentation at an invitation-only event
4  open only to lead buyers, such as schools. Gillman discussed "a variety of best and
5  worst practices" for lead buyers based on "his personal experience combating high-
6  risk tactics that resulted in millions of dollars in fines levied against marketing
7  services firms."

8        38.    Similarly, in July 2012, Gillman gave another invitation-only
9  presentation to lead buyers addressing: "a variety of complex compliance concerns
10  that exist in the space today" and provided "Lead Buyers with key questions they
11  can ask vendors to ensure their brand integrity will not be put at risk."

12  **E.    Defendants provide "compliance" reports to schools which falsely
13         identify ads displayed by Future Ads App as "potential violations" and
        "adware."**

14        39.    In September 2012, Future Ads' lead-generator customers began
15  forwarding reports to Future Ads which Defendants created. The reports implied
16  that schools risked compliance issues if they purchased leads generated from
17  "adware." The reports specifically referenced ads displayed by Future Ads' App as
18  "adware" and as "potential violations."

19        40.    Defendants described their services as providing advice about
20  "compliance with state and federal regulations," but the reports do not explain
21  which state or federal regulations have been allegedly violated.

22        41.    The reports also use the term "adware," which is generally understood
23  to refer to malicious software installed without user consent which surreptitiously
24  monitors the user's activity.

25        42.    For example, according to the National Cyber Security Alliance, the
26  terms "spyware" and "adware" refer to software which can: "download themselves
27  onto your computer without your permission (typically when you visit an unsafe
28  website or via an attachment)" and "make your computer do things you don't want

1  it to do. That might be as simple as opening an advertisement you didn't want to
2  see."[6]

3      43.    Similarly, Princeton University's Office of Information Technology
4  classifies "adware" as "malicious software" as follows:[7]

5      "Spyware and adware are programs that can be secretly installed on
6      your computer when you access the websites on the Internet that
7      distribute them…While just knowing an individual's web surfing
8      preferences is already an invasion of privacy, unfortunately these
9      programs can do much worse. They can install software that
10     intentionally or unintentionally degrades the performance of your
11     system, uncovers confidential data on your system, captures
12     passwords, destroys data, and more."

13     44.    Future Ads' App is not "adware" as that term is generally
14 understood—it has no malicious or surreptitious function of any kind. The App is
15 installed only after receiving the user's express consent. It does not collect
16 personally-identifying information about the user. The App presents a limited
17 amount of advertising in a non-intrusive and conservative manner while the user is
18 browsing the web. And Future Ads provides clear App uninstallation instructions
19 based on the standard Windows "Add or Remove Programs" tool.

20     45.    Moreover, the practice of displaying ads via software is commonplace
21 and widely accepted by major software developers, advertisers, and consumers.
22 For example, a major feature of Microsoft Corporation's Windows 8 desktop
23 operating system is "Ads in Apps," which lets advertisers display ads to users of

24 [6] *Malware & Botnets*, STAYSAFEONLINE.ORG, http://www.staysafeonline.org/stay-
25 safe-online/keep-a-clean-machine/malware-and-botnets (last visited June 11,
2013).
26 [7] *Viruses and other forms of malicious software*, PRINCETON UNIVERSITY OFFICE OF
INFORMATION TECHNOLOGY (July 5, 2012),
27 http://www.princeton.edu/itsecurity/basics/malicious-software/ (last visited
June 13, 2013).
28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Microsoft software as an "integrated and seamless part of the user experience."[8]

2      46.    Yet by identifying Future Ads' App as "adware," Defendants

3   intentionally mislead schools into forbidding lead generators from advertising via

4   Future Ads' App.

5      47.    Defendants have identified ads displayed by Future Ads' App as

6   "potential violations" and "adware" in order to give their customers the appearance

7   that Defendants provide value by identifying regulatory-compliance issues which,

8   in truth, do not exist.

9   **F.   Defendants' misleading reports specifically referring to ads displayed**

10   **by Future Ads' App as "adware" and "potential violations" have caused substantial harm to Future Ads.**

11      48.    In 2013, Future Ads began receiving communications from lead

12   generators instructing Future Ads to stop running ads for certain schools in the

13   App. Certain schools demanded that their ads not be delivered in "adware"—and

14   Defendants' reports caused Future Ads' App to be swept up in the definition of

15   "adware."

16      49.    These demands began shortly after Gillman presented a sales pitch

17   and scare tactics to lead buyers at the March 2013 LeadsCon conference in Las

18   Vegas, Nevada. Future Ads learned that Omniangle's presentation was highly

19   secretive and subject to tight security. The presentation focused on "adware"-

20   related "compliance" issues.

21      50.    Since then, lead generators have sent Future Ads copies of Omniangle

22   reports they received from schools. The reports are titled "potential violations" and

23   specifically refer to ads displayed by Future Ads' App as "adware" in large bold

24   type.

25      51.    By publishing reports specifically referring to ads displayed by Future

26   Ads' App as "adware" and as "potential violations" in bold print, Defendants are

27   [8] *Ads in Apps*, MICROSOFT ADVERTISING, http://advertising.microsoft.com/en-

28   us/windows-8-ads-in-apps (last visited June 10, 2013).

1   making a statement that Future Ads is potentially violating the law.

2       52.     Gillman is directly responsible for creating Omniangle's reports and is

3   responsible for the intentional false and misleading statements described in this

4   complaint.

5       53.     Because Defendants have created a misimpression that applications

6   like Future Ads' App are malicious software, some schools now enforce no-

7   "adware" policies and apply them to Future Ads' App. This substantially impacts

8   Future Ads' revenue. Lead generators buy less advertising from Future Ads

9   because there are fewer schools willing to pay for leads generated from Future Ads

10  advertising.

11      54.     At least one major lead generator advised Future Ads that it may stop

12  buying advertising from Future Ads because "several of our larger schools are

13  thinking about blocking all adware-based ads in our system."

14      55.     By publishing reports indicating that ads displayed by Future Ads'

15  App are "adware" or "potential violations," Defendants have swept up Future Ads

16  into Defendants' unfair and deceptive definition of "adware" and caused customers

17  and schools to believe that Future Ads is providing services that violate state and

18  federal regulations.

19      56.     In truth, Future Ads provides a service benefiting all three

20  constituents. Consumers receive information about relevant education programs.

21  Lead generators' businesses thrive by connecting schools and consumers. And

22  schools attract new students who otherwise may not have been exposed to their

23  educational opportunities.

24      57.     Future Ads does not create or develop any of the advertising content

25  that would be subject to the marketing regulations described earlier. Further, the

26  same advertising content created by lead generators and displayed to users by

27  Future Ads App is distributed elsewhere using other advertising methods.

28      58.     Future Ads has lost substantial advertising revenue due to the

1  knowingly false information which Defendants provided to schools. The damage is

2  ongoing, and absent injunctive relief Future Ads will continue to be harmed by

3  Defendants' intentional misrepresentations and false statements.

4        59.    Defendants make these false representations in an effort to appear to

5  provide value so that they can increase their own revenue and build a business

6  based upon scaring schools into paying Defendants for information about

7  "potential violations" of state and federal regulations which do not exist.

## V.    FIRST CAUSE OF ACTION
### TRADE LIBEL

10       60.    Future Ads incorporates Paragraphs 1–59 of its Complaint by

11  reference.

12       61.    Defendants published reports to schools including statements

13  describing ads displayed by Future Ads' App as "potential violations" and as

14  "adware."

15       62.    Those statements are false because the ads identified are neither

16  "violations" nor "potential violations."

17       63.    Those statements are also false because they falsely imply that the ads

18  relate to malicious "adware."

19       64.    Those statements disparage the quality of Future Ads' business and

20  services.

21       65.    Defendants intentionally published the statements by communicating

22  them to schools in writing, and Defendants knew the statements were false when

23  Defendants published them.

24       66.    Defendants' publication of those statements has played a material and

25  substantial part in inducing others not to deal with Future Ads.

26       67.    As a result of Defendants' statements, Future Ads has suffered injury

27  in its business by losing current and future revenue from the sale of advertising.

28       68.    As a direct, proximate, and foreseeable result of Defendants' false

1   statements, Future Ads has been damaged in an amount to be determined at trial,
2   exceeding $75,000.

3       69.    Future Ads is entitled to and requests an award of punitive and
4   exemplary damages under California Civil Code § 3294(a) against Defendants
5   because Defendants acted with, and were guilty of, oppression, fraud, and/or
6   malice.

7       70.    As a direct and proximate result of Defendants' trade libel, Future Ads
8   is suffering immediate and irreparable harm.

9

10  **VI.   SECOND CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

11      71.    Future Ads incorporates Paragraphs 1–70 of its Complaint by
12  reference.

13      72.    Future Ads has contracts with lead generators in the education
14  industry under which lead generators purchase advertising from Future Ads.

15      73.    Defendants knew of Future Ads' contracts with those lead generators.

16      74.    Defendants engaged in intentional acts designed to disrupt the
17  performance of those contracts for Defendants' own benefit.

18      75.    Defendants' conduct prevented performance or made performance
19  more expensive or difficult, resulting in economic harm to Future Ads in the form
20  of decreased revenue from those lead-generator customers.

21      76.    Defendants' acts were a substantial factor in causing Future Ads'
22  harm.

23      77.    As a direct, proximate, and foreseeable result of Defendants'
24  interference with Future Ads' contractual relations, Future Ads has been damaged
25  in an amount to be determined at trial, exceeding $75,000.

26      78.    Future Ads is entitled to and requests an award of punitive and
27  exemplary damages under California Civil Code § 3294(a) against Defendants
28  because Defendants acted with, and were guilty of, oppression, fraud, and/or

1  malice.

2    79.    As a direct and proximate result of Defendants' intentional

3  interference with its contractual relations, Future Ads is suffering immediate and

4  irreparable harm.

5    **VII.   THIRD CAUSE OF ACTION**

6    **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

7    80.    Future Ads incorporates Paragraphs 1–79 of its Complaint by

8  reference herein.

9    81.    Future Ads had economic relationships with its lead-generator

10  customers that probably would have resulted in economic benefit to Future Ads.

11    82.    Defendants knew of those relationships.

12    83.    Defendants engaged in intentional acts designed to disrupt those

13  relationships for Defendants' own benefit.

14    84.    Defendants' intentional acts were wrongful because Defendants

15  falsely specifically referred to ads displayed by Future Ads' App as "potential

16  violations" or as "adware." Defendants made these representations in a report of

17  "potential violations" indicating ads displayed by Future Ads' App were

18  potentially unlawful. These statements, either alone or in context, are defamatory

19  and constitute unfair competition.

20    85.    As a result, Future Ads' relationships with lead-generator customers

21  have been disrupted, resulting in economic harm to Future Ads in the form of

22  decreased revenue from those customers.

23    86.    Defendants' conduct was a substantial factor in causing Future Ads'

24  economic harm.

25    87.    As a direct, proximate, and foreseeable result of Defendants'

26  interference with Future Ads' economic relationships, Future Ads has been

27  damaged in an amount to be determined at trial, exceeding $75,000.

28    88.    Future Ads is entitled to and requests an award of punitive and

1  exemplary damages under California Civil Code § 3294(a) against Defendants
2  because Defendants acted with, and were guilty of, oppression, fraud, and/or
3  malice.

4      89.    As a direct and proximate result of Defendants' intentional
5  interference with its economic relationships, Future Ads is suffering immediate and
6  irreparable harm.

7
8
## VIII. FOURTH CAUSE OF ACTION
## DEFAMATION (PER SE)

9      90.    Future Ads incorporates Paragraphs 1–89 of its Complaint by
10 reference.

11     91.    Defendants published reports to schools including statements
12 describing ads displayed by Future Ads' App as "potential violations" and as
13 "adware."

14     92.    Those statements are false because the ads identified are neither
15 "potential violations" nor "violations" nor "adware".

16     93.    The statements were unprivileged.

17     94.    Defendants intentionally published the statements when Defendants
18 communicated them to schools in writing, Defendants knew the statements were
19 false when the Defendants published them, and knew that such actions would harm
20 Future Ads.

21     95.    Defendants' intentional statements were of and concerning Future
22 Ads, either expressly or by inference, because the statements would be understood
23 by the reader as referring to Future Ads.

24     96.    Defendants' intentional statements are libelous per se because they
25 include on their face references to "violation" and/or "adware" which are
26 defamatory without the necessity of explanatory matter because they expose Future
27 Ads to hatred, contempt, ridicule, or disgrace, or cause Future Ads to be shunned
28 or avoided, or tend to injure Future Ads in its business of selling online

1   advertising.

2      97.   As a direct, proximate, and foreseeable result of Defendants'

3   defamatory statements, Future Ads has been damaged in an amount to be

4   determined at trial, exceeding $75,000.

5      98.   Future Ads is entitled to and requests an award of punitive and

6   exemplary damages under California Civil Code § 3294(a) against Defendants

7   because Defendants acted with, and were guilty of, oppression, fraud, and/or

8   malice.

9      99.   As a direct and proximate result of Defendants' defamatory conduct,

10   Future Ads is suffering immediate and irreparable harm.

11

12                    **IX.   FIFTH CAUSE OF ACTION**
                      **DEFAMATION (PER QUOD)**

13      100.   Future Ads incorporates Paragraphs 1–99 of its Complaint by

14   reference.

15      101.   Defendants intentionally published reports to schools including

16   statements describing ads displayed by Future Ads' App as "potential violations"

17   and as "adware."

18      102.   Those statements are false because the ads identified are neither

19   "violations" nor "potential violations" of any state or federal regulation and were

20   not displayed by "adware" as that term is generally understood.

21      103.   Those statements are also false because, under the circumstances in

22   which they were published—namely, in connection with Defendants' compliance-

23   advising services and reports described as "potential violations"—they implied that

24   ads displayed by Future Ads' App were unlawful or failed to comply with state or

25   federal regulations, which is false.

26      104.   The statements were unprivileged.

27      105.   Defendants published the statements when it communicated the

28   statements to schools in writing, Defendants knew the statements were false when

1  Defendants published the statements, and knew that such actions would harm
2  Future Ads.

3      106.   The statements were of and concerning Future Ads, either expressly
4  or by inference, because the statements would be understood by the reader as
5  referring to Future Ads.

6      107.   The statements are libelous per quod because they were provided to
7  schools in the context of the schools' general concerns about advertising-
8  compliance issues specific to their industry, and the references to "potential
9  violations" and/or "adware" are defamatory when considered in that context.

10     108.   As a result of Defendants' intentional conduct, Future Ads has
11 suffered damages in the form of lost revenue due to decreased purchase of Future
12 Ads advertising.

13     109.   As a direct, proximate, and foreseeable result of Defendants'
14 defamatory statements, Future Ads has been damaged because it has lost revenue
15 due to lead generators' decreased purchases of Future Ads' advertising in an
16 amount to be determined at trial, exceeding $75,000.

17     110.   Future Ads is entitled to and requests an award of punitive and
18 exemplary damages under California Civil Code § 3294(a) against Defendants
19 because Defendants acted with, and were guilty of, oppression, fraud, and/or
20 malice.

21     111.   As a direct and proximate result of Defendants' defamatory conduct,
22 Future Ads is suffering immediate and irreparable harm.

23              **X.    SIXTH CAUSE OF ACTION**
                     **UNFAIR COMPETITION**
24            **CAL. BUS. & PROF. CODE §§ 17200 *et seq.***

25     112.   Future Ads incorporates Paragraphs 1–111 of its Complaint by
26 reference.

27     113.   Defendants claim to provide services and advice about "compliance

28

1   with state and federal regulations."[9]

2       114.   But Defendants are not lawyers, and not qualified to provide that
3   advice.

4       115.   Instead, Defendants fabricate alleged "potential violations" that they
5   publish to create the appearance Defendants are providing value to their customers.

6       116.   The "compliance" advice that Defendants provide their customers
7   probably constitutes the unauthorized practice of law, which is unlawful.

8       117.   Defendants' conduct constitutes unlawful, unfair, or fraudulent
9   business acts or practices and is therefore unfair competition in violation of
10  California Business and Professions Code § 17200.

11      118.   As a direct and proximate result of Defendants' unfair competition,
12  Future Ads is suffering immediate and irreparable harm.

13                   **XI.   RELIEF REQUESTED**

14      Plaintiff Future Ads LLC requests that the Court enter judgment against
15  Defendants Jonathan L. Gillman and Omniangle Technologies, LLC as follows:

16      A.    A judgment, order, or award of damages adequate to compensate
17            Future Ads for Defendants' unlawful conduct;

18      B.    A finding that the Defendants are each jointly and severally liable;

19      C.    Punitive, special, or exemplary damages as allowed by law;

20      D.    A temporary and permanent injunction prohibiting further defamatory,
21            false, or otherwise unlawful statements;

22      E.    An order under California Business & Professions Code § 17203
23            preventing Defendants from engaging in unfair competition;

24      F.    An order under California Business & Professions Code § 17203
25            directing Defendants to restore all money and property acquired from
26            educational institutions to whom Defendants provided reports titled

27  ──────────────
28  [9] *See* Paragraph 32.

"potential violations" or which otherwise purported to identify
compliance-related issues;

G.   A temporary and permanent injunction enjoining and preventing
Defendants and any individual or entity associated with Defendants
from:

    i.   contacting any educational institutions in conjunction with any
advertising displayed by Future Ads' App;

    ii.   referring to or describing any Future Ads advertising practices,
including without limitation displaying ads via the App, as
"violations," "potential violations," or "adware"; or

    iii.   engaging in the unauthorized practice of law;

H.   Attorney's fees, as allowed by law; and

I.   Such other and further relief as this Court or a jury may deem proper
and just.

Dated this 14th day of June, 2013.

Respectfully Submitted,

**NEWMAN DU WORS LLP**

By: _____

Derek A. Newman, State Bar No. 190467
*derek@newmanlaw.com*
John Du Wors, State Bar No. 233913
*duwors@newmanlaw.com*
Derek Linke, *pro hac vice* to be filed
*linke@newmanlaw.com*

Attorneys for Plaintiff
FUTURE ADS LLC

## XII.   JURY DEMAND

Under FED. R. CIV. P. 38(b), Plaintiff Future Ads LLC demands a trial by jury of all issues presented in this complaint which are triable by jury.

Dated this 14th day of June, 2013.


                              Respectfully Submitted,

                              **NEWMAN DU WORS LLP**


                    By:    _signature_
                              Derek A. Newman, State Bar No. 190467
                              *derek@newmanlaw.com*
                              John Du Wors, State Bar No. 233913
                              *duwors@newmanlaw.com*
                              Derek Linke, *pro hac vice* to be filed
                              *linke@newmanlaw.com*

                              Attorneys for Plaintiff
                              FUTURE ADS LLC

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Future Ads LLC, a California limited liability company

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Jonathan L. Gilliman, an individual and Omniangle Technologies, LLC, a Florida limited liability company

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Derek Newman
Newman Du Wors LLP
100 Wilshire Boulevard, Suite 950
Santa Monica, CA 90401, (310) 359-8200

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332; tortious interference, trade libel, unfair competition

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number: **SACV13-905 AN**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO    ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO    ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff Future Ads LLC, Orange County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Defendant Jonathan L. Gillman, Florida<br>Defendant Omniangle Technologies, LLC, Florida |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| *ORANGE COUNTY* | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: June 14, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |