1   MORGAN, LEWIS & BOCKIUS LLP
    BRIAN M. JAZAERI (SBN 221144)
2   bjazaeri@morganlewis.com
    ESTHER K. RO (SBN 252203)
3   ero@morganlewis.com
    300 South Grand Avenue
4   Twenty-Second Floor
    Los Angeles, CA 90071-3132
5   Tel:   213.612.2500
    Fax:   213.612.2501
6
    CAHILL GORDON & REINDEL LLP
7   SUSAN BUCKLEY (*pro hac vice pending*)
    sbuckley@cahill.com
8   JOEL KURTZBERG (*pro hac vice pending*)
    jkurtzberg@cahill.com
9   80 Pine Street
    Twenty-Second Floor
10  New York, NY 10005
    Tel:   212.701.3862
11  Fax:   212.378.2166

12
    Attorneys for Defendants
13  JONATHAN L. GILLMAN and
    OMNIANGLE TECHNOLOGIES, LLC
14

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17                  SOUTHERN DIVISION

18

19  FUTURE ADS LLC, a California          Case No. 8:13-CV-00905-DOC-(JPRx)
    limited liability company,
20                                         **MEMORANDUM IN SUPPORT OF
                 Plaintiff,                DEFENDANTS' SPECIAL
21                                         MOTION TO STRIKE THE
           vs.                             COMPLAINT UNDER THE ANTI-
22                                         SLAPP STATUTE (CODE OF
    JONATHAN L. GILLMAN, an                CIVIL PROCEDURE § 425.16) OR,
23  individual, and OMNIANGLE             IN THE ALTERNATIVE, TO
    TECHNOLOGIES, LLC, a Florida          DISMISS PURSUANT TO FED. R.
24  limited liability company,            CIV. P. 12(b)(6)**

25               Defendants.              Date:   September 9, 2013
                                          Dept.:  Courtroom 9D
26                                        Judge:  Honorable David O. Carter

27                                        Complaint filed June 14, 2013

28

MORGAN, LEWIS &
BOCKIUS LLP                                       MEMO IN SUPPORT OF DEFENDANTS'
ATTORNEYS AT LAW                                  MOTION TO STRIKE/DISMISS COMPL.
LOS ANGELES                                       CASE NO. 8:13-CV-00905-DOC-(JPRX)
DB1/ 75225974.1

1

## TABLE OF CONTENTS

2

**Page**

3

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ...............................................................................3

ARGUMENT ..................................................................................................4

I.   OMNIANGLE'S SPEECH IS PROTECTED BY THE ANTI-SLAPP STATUTE ...........................................................................................4

II.  BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM, IT SHOULD BE STRICKEN UNDER THE ANTI-SLAPP STATUTE ..........7

   A.   Plaintiff Cannot Prevail on its Defamation Claims............................7

      1.   Plaintiff Has Not Pleaded Facts Sufficient to Plausibly Demonstrate that the Word "Adware" is Defamatory ..............8

      2.   On Its Face the Complaint Demonstrates that Plaintiff's Activity Is "Adware" ...........................................................10

      3.   The Phrase "Potential Violation" is a Non-actionable Statement of Opinion and Plaintiff Fails to Allege Facts That Plausibly Imply a Defamatory Meaning.........................11

      4.   The Complaint Fails to Allege Facts Sufficient to Establish Actual Malice ........................................................12

   B.   Because Plaintiff's Defamation Claims Fall, So Too Do Its Remaining Claims ...........................................................................13

   C.   Plaintiff's Trade Libel and Defamation Per Quod Claims Also Fail Because Plaintiff has not Pleaded Special Damages..................14

   D.   Plaintiff's Intentional Interference Claims Also Fail Because The Complaint Fails to Identify any Contract or Economic Relationship with which Defendants Allegedly Interfered ...............15

   E.   Plaintiff's Unfair Competition Claim Fails Because Plaintiff Has Not Alleged Adequately any "Unlawful, Unfair or Fraudulent Conduct".........................................................................................18

III. THE COURT SHOULD AWARD DEFENDANTS THEIR ATTORNEYS' FEES UNDER THE ANTI-SLAPP STATUTE.................20

CONCLUSION .............................................................................................21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

DB1/ 75225974.1

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3 **Cases**

4

*Ashcroft* v. *Iqbal*,
5     556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................... 10, 12, 13

6 *Aviation Charter, Inc.* v. *Aviation Research Group/US*,
7     416 F.3d 864 (8th Cir. 2005).............................................................................11

8 *Bell Atlantic Corp.* v. *Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................... 10, 12, 13
9

10 *Blackburn* v. *ABC Legal Services, Inc.*,
    2012 WL 1067632 (N.D. Cal. Feb. 24, 2012) ...................................................20
11

12 *Blatty* v. *New York Times Co.*,
    42 Cal. 3d 1033 (1986), *cert. denied*, 485 U.S. 934, 108 S. Ct. 1107,
13     99 L. Ed. 2d 268 (1988) ...................................................................................13

14 *Brown* v. *Kelly Broadcasting Co.*,
15     48 Cal. 3d 711, 257 Cal. Rptr. 708 (1989) .......................................................12

16 *Capitol West Appraisals LLC* v. *Countrywide Financial Corp.*,
    467 Fed. Appx. 738 (9th Cir. 2012) .................................................................18
17

18 *Cel-Tech Communications, Inc.* v. *Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999)...............................................19, 20
19

20 *Central Coast Pipe Lining, Inc.* v. *Pipe Shield USA, Inc.*,
    2013 WL 1703023 (C.D. Cal. Apr. 19, 2013) .................................................16
21

22 *Christakis* v. *Mark Burnett Productions*,
    2009 WL 1248947 (C.D. Cal. Apr. 27, 2009) .................................................14

23 *Cochran* v. *NYP Holdings, Inc.*,
24     58 F. Supp. 2d 1113 (C.D. Cal. 1998), *aff'd*.....................................................8

25 *Committee on Children's Television, Inc.* v. *General Foods Corp.*,
26     35 Cal. 3d 197, 197 Cal. Rptr. 783 (1983) .......................................................20

27 *Connick* v. *Myers*,
28     461 U.S. 138 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708, 719 (1983).................13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

ii

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

*Cross* v. *Cooper*,
   197 Cal. App. 4th 357, 127 Cal. Rptr. 3d 903 (6th Dist. 2011)...........................5

*F.M. Tarbell Co.* v. *A & L Partners, Inc.*,
   2011 WL 1153539 (C.D. Cal Mar. 23, 2011)....................................................16

*Films of Distinction, Inc.* v. *Allegro Film Productions, Inc.*,
   12 F. Supp. 2d 1068 (C.D. Cal. 1998)..............................................................14

*Global Telemedia International, Inc.* v. *Doe 1*,
   132 F. Supp. 2d 1261 (C.D. Cal. 2001) (Carter, J.) ....................................2, 11

*Hobby Industry Ass'n of America* v. *Younger*,
   101 Cal. App. 3d 358, 161 Cal. Rptr. 601, 161 Cal. Rptr. 601 (2d Dist.
   1980) .................................................................................................................20

*Hustler Magazine, Inc.* v. *Falwell*,
   485 U.S. 46, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988) .......................................13

*In re Insurance Installment Fee Cases*,
   211 Cal. App. 4th 1395, 150 Cal. Rptr. 3d 618 (4th Dist. 2012).......................20

*Ingels* v. *Westwood One Broadcasting Services, Inc.*,
   129 Cal. App. 4th 1050, 28 Cal. Rptr. 3d 933 (2d Dist. 2005)..........................19

*Isuzu Motors Ltd.* v. *Consumers Union of United States, Inc.*,
   12 F. Supp. 2d 1035 (C.D. Cal. 1998)..............................................................14

*Jamarillo* v. *Food 4 Less Madera*,
   2010 WL 3717307 (E.D. Cal. Sept. 15, 2010)...................................................15

*Kenner* v. *Kelly*,
   2012 WL 553943 (S.D. Cal. Feb. 21, 2012)......................................................18

*Khoury* v. *Maly's, Inc.*,
   14 Cal. App. 4th 612, 17 Cal. Rptr. 2d 708 (2d Dist. 1993).............................19

*Korea Supply Co.* v. *Lockheed Martin Corp.*,
   29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003)............................................17, 18

*Krantz* v. *BT Visual Images, L.L.C.*,
   89 Cal. App. 4th 164, 107 Cal. Rptr. 2d 209 (1st Dist. 2001)...........................19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

*Miller* v. *Nestande*,
   192 Cal. App. 3d 191, 237 Cal. Rptr. 359 (4th Dist.1987) ...............................12

*Navellier* v. *Sletten*,
   29 Cal. 4th 82, 124 Cal. Rptr. 2d 530 (2002).......................................................4

*New.Net, Inc.* v. *Lavasoft*,
   356 F. Supp. 2d 1071 (C.D. Cal. 2003) ............................................7, 13, 14, 16

*Newcombe* v. *Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998).............................................................................15

*Orchard Supply Hardware LLC* v. *Home Depot USA, Inc.*,
   2013 WL 1563228 (N.D. Cal. Apr. 12, 2013) ...................................................17

*Pacific Gas & Electric Co.* v. *Bear Stearns & Co.*,
   50 Cal. 3d 1118, 270 Cal. Rptr. 1 (1990) .........................................................16

*Partington* v. *Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995)..............................................................................11

*Pham* v. *Bank of America, N.A.*,
   2010 WL 3184263 (N.D. Cal. Aug. 11, 2010) ...................................................13

*Reader's Digest Assoc'n* v. *Superior Court*,
   37 Cal. 3d 244, 208 Cal. Rptr. 137 (1984), *cert. denied sub nom.*
   *Synanon Church* v. *Reader's Digest Association, Inc.*, 478 U.S. 1009,
   106 S. Ct. 3307, 92 L. Ed. 2d 720 (1986)..........................................................14

*Rivera* v. *First DataBank, Inc.*,
   187 Cal. App. 4th 709, 115 Cal. Rptr. 3d 1 (4th Dist. 2010) ..............................5

*Sliter* v. *Electronic Data Systems, Inc.*,
   1996 WL 449189 (N.D. Cal. Aug. 5, 1996) .........................................................9

*Smith* v. *State Farm Mutual Automobile Insurance Co.*,
   93 Cal. App. 4th 700, 113 Cal. Rptr. 2d 399 (2d Dist. 2001)............................19

*Snyder* v. *Phelps*,
   131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011)........................................................13

*Sybersound Records, Inc.* v. *UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008)............................................................................18

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

*Troy Group, Inc.* v. *Tilson*,
   364 F. Supp. 2d 1149 (C.D. Cal. 2005) ............................................................8

*Vogel* v. *Felice*,
   127 Cal. App. 4th 1006, 26 Cal. Rptr. 3d 350 (6th Dist. 2005)........................14

*Yagman* v. *Galipo*,
   2013 WL 1287409 (C.D. Cal. Mar. 25, 2013)...................................................16

*Z.F.* v. *Ripon Unified School District*,
   482 Fed. Appx. 239 (9th Cir. 2012) .................................................................3

*ZL Technologies, Inc.* v. *Gartner, Inc.*,
   709 F. Supp. 2d 789 (N.D. Cal. 2010), *aff'd*, 433 Fed. Appx. 547 (9th
   Cir. 2011)........................................................................................................11

**Congressional Materials**

S. Comm. on Health, Education, Labor, and Pensions, 112th Cong.,
   1 For Profit Higher Education: The Failure to Safeguard
   the Federal Investment and Ensure Student Success,
   at 65-67 (Comm. Print 2012) ....................................................................... 5-6

**Constitutional Provisions**

First Amendment .......................................................................................11, 13, 14

**Internet Sources**

Cambridge Dictionaries Online, "Adware,"
   http://dictionary.cambridge.org/us/dictionary/business-
   english/adware?q=adware (last visited July 31, 2013)......................................8

Merriam-Webster Online, "Adware," http://www.merriam-
   webster.com/dictionary/adware (last visited July 31, 2013) .............................8

PC Magazine Encyclopedia, "Adware,"
   http://www.pcmag.com/encyclopedia_term/0,,t=&i=37577,00.asp
   (last visited July 31, 2013) ...............................................................................8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

v

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

Princeton University Office of Information Technology, *What is Spyware/Adware? How Do I Safeguard Myself Against Spyware?* (July 13, 2009), http://helpdesk.princeton.edu/kb/display.plx?ID=9538 (last visited July 31, 2013) ...................................................................................9

**Rules**

Federal Rules of Civil Procedure 9(g) ...................................................14

Federal Rules of Civil Procedure 12(b)(6) ...................................3, 7, 21

**Statutes**

California Business & Professions Code § 17200 .................1, 18, 19, 20

California Civil Code § 45 .......................................................................8

California Civil Code § 45a ....................................................................15

California Code of Civil Procedure § 425.16 ........................................21

California Code of Civil Procedure § 425.16(a) ..................................1, 5

California Code of Civil Procedure § 425.16(c)(1) ...............................20

California Code of Civil Procedure § 425.16(e)(4) ...........................5, 20

**Other Authorities**

FTC Staff Report, *Monitoring Software on Your PC: Spyware, Adware, and Other Software* (Mar. 2005) *available at* http://www.ftc.gov/os/2005/03/050307spywarerpt.pdf ....................................6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

**PRELIMINARY STATEMENT**

Plaintiff's Complaint is the very model of one that should be stricken under California's anti-SLAPP statute because it is "brought primarily to chill the valid exercise of the constitutional right[] of freedom of speech." Cal. Code Civ. Proc. § 425.16(a). As the Complaint alleges, colleges and universities contract with Omniangle to monitor Internet advertisements placed on their behalf and to report back to those schools about the nature of the advertisements Omniangle's monitoring reveals. Future Ads is unhappy with this arrangement, complaining that certain unidentified reports sent by Omniangle to certain unidentified clients have characterized certain unidentified ads placed by Future Ads as "adware" or as "potential violations."[1]

In short, Future Ads dislikes Omniangle's monitoring of its online activities and seeks to silence Omniangle from reporting on those activities "through abuse of the judicial process." Cal. Code Civ. Proc. § 425.16(a). To that end, Future Ads filed this action asserting claims for trade libel, intentional interference with contractual relations, intentional interference with prospective economic advantage, defamation (per se), defamation (per quod), and unfair competition under Cal. Bus. & Prof. Code § 17200 against both Defendants. All of the claims should be stricken.

In adjudicating this anti-SLAPP motion, the Court is required to engage in a two-pronged inquiry to determine first, whether Plaintiff's suit arises from "an exercise of Defendants' right to free speech 'in connection with a public issue,'"

---

[1] When it purports to quote the reports it challenges, the Complaint alleges that those reports characterized certain of Future Ads' activities as "potential violations". *See* Compl. ¶¶ 39, 51, 55, 61, 62, 84, 96, 101. When it is not purporting to quote the reports, the Complaint, incorrectly and without any supporting facts or context, infers that Omniangle's reports suggest that certain of Future Ads' activities are "potential violations of law." *See, e.g.*, Compl. ¶¶ 4, 51, 55, 84, 103. In fact, Omniangle reports to each of its clients on potential violations of the client's internal guidelines that are provided to Omniangle by the client.

Morgan, Lewis & Bockius LLP
Attorneys at Law
Los Angeles
DB1/ 75225974.1

1

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

1  and second, "whether Plaintiff[] [has] a probability of success on [its] claims."

2  *Global Telemedia International, Inc.* v. *Doe 1*, 132 F. Supp. 2d 1261, 1265 (C.D.

3  Cal. 2001) (Carter, J.) (citation omitted).

4       That Omniangle's speech concerns matters of public interest cannot seriously

5  be disputed.  As the Complaint accurately alleges (Compl. ¶ 28), colleges and

6  universities are under increasing scrutiny — by Congress, the Department of

7  Education and others — to ensure that their Internet advertising is fairly presented,

8  accurate and responsible.  When a school retains Omniangle to monitor whether

9  Internet advertising placed on its behalf complies with its policies and guidelines,

10  that school is acting both prudently and responsibly in ensuring that

11  communications to potential students do not mischaracterize, overstate or mislead.

12  Omniangle's reports are one tool in a school's arsenal for doing just that.  Those

13  reports thus relate to matters of indisputable public interest.  As such, the burden

14  shifts to Plaintiff on this motion to establish a probability of success on its claims.

15       Plaintiff cannot sustain that burden for the simple reason that its Complaint

16  fails to state a claim at all.  Specifically:

17
18  - Plaintiff's defamation claims based on the word "adware" fall because it has not pleaded facts sufficient to demonstrate that the word "adware" is defamatory *and* because the face of the Complaint reveals that it is an accurate descriptor of Future Ads' activities.
19

20  - Plaintiff's defamation claims based on the phrase "potential violation" fall because "potential violation" is a nonactionable statement of opinion and because the Complaint fails to allege facts that plausibly demonstrate that Omniangle's reports use the phrase in a defamatory manner.
21

22  - Plaintiff's defamation claims also fall because the Complaint fails adequately to allege that the challenged statements were published with actual malice.
23

24  - Plaintiff's claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, defamation per quod and unfair competition all fall for the same reasons its defamation claims fall.  The constitutionally-driven protections afforded to speech apply whatever label Plaintiff attaches to its claims.
25
26

27  - Plaintiff's claims for trade libel and defamation per quod also fall because the Complaint fails adequately to plead special damages.
28

Morgan, Lewis & Bockius LLP
Attorneys at Law
Los Angeles

DB1/ 75225746.1

2

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

- Plaintiff's claims for intentional interference with contractual relations and intentional interference with prospective economic advantage also fall because the Complaint identifies no specific contract or economic relationship with which the Defendants allegedly interfered.

- Plaintiff's unfair competition claim also falls because the Complaint fails adequately to plead that Defendants' actions are "unlawful, unfair or fraudulent."

Because Plaintiff cannot demonstrate a probability of prevailing on any of its claims, the Complaint should be stricken under the anti-SLAPP statute.[2]

## STATEMENT OF FACTS

Omniangle is a business intelligence and information security firm located in Weston, Florida.  Compl. ¶¶ 15, 32.  Jonathan L. Gillman is Omniangle's founder and Chief Executive Officer Officer.  Omniangle provides a variety of compliance monitoring and data analysis services for many companies that advertise online, including numerous colleges and universities.  *See* Compl. ¶ 27.  Among other things, Omniangle audits the ads placed by its clients' online marketing partners to help its clients ensure that representations to users are not being made that would potentially violate the clients' marketing compliance and/or brand integrity guidelines.  Omniangle furnishes reports summarizing the results of its monitoring efforts to its clients.  *See* Compl. ¶ 39.

Future Ads is an operator of an online advertising platform and is based in Irvine, California.  *See* Compl. ¶¶ 1, 13.  By offering free games to computer users, Future Ads induces those users to download its software from the Internet.  Compl. ¶¶ 18-19.  Once installed, the Future Ads software exposes the computer user to advertising that would not otherwise be visible while browsing the Internet. Compl. ¶ 21.  Future Ads' customers are advertisers and include "lead generators," businesses that sell contact information for potential students to certain colleges and

---

[2]  California federal courts adjudicate anti-SLAPP motions based on legal deficiencies under the standard of Federal Rule of Civil Procedure 12(b)(6).  *See Z.F.* v. *Ripon Unified School District*, 482 Fed. Appx. 239, 240 (9th Cir. 2012).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

3

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

1  universities.  Compl. ¶ 1.  Lead generators collect consumer contact information
2  through online advertising distributed via Future Ads' platform.  *See* Compl. ¶ 25.

3       Future Ads' Complaint focuses on the reports that Omniangle issues to its
4  clients.  *See* Compl. ¶¶ 39, 50.  Although Plaintiff attached none of the reports to its
5  Complaint, leaving both Defendants and the Court in the dark as to the form and
6  context of the allegedly defamatory statements about which Plaintiff complains,
7  Future Ads objects to the use of the language "adware" and "potential violations" in
8  Omniangle's reports.  *See* Compl. ¶¶ 39, 50.  Future Ads claims that the use of the
9  term "adware" implies that its software is installed without computer users' consent
10 and surreptitiously monitors their Internet activity.  *See* Compl. ¶ 41.  As for the
11 phrase "potential violations," Future Ads claims that the words imply that Future
12 Ads has violated the law, Compl. ¶¶ 4, 103, although it pleads no facts from which
13 one could plausibly draw that inference.  The Complaint goes on to claim that
14 Omniangle's reporting has caused certain unnamed schools to direct lead generators
15 not to advertise through Future Ads, *see* Compl. ¶¶ 5, 48, and that some schools
16 have instituted policies against "adware" that affect Future Ads.  Compl.  ¶ 53.
17 Although the Complaint identifies some specific schools that receive leads obtained
18 through advertising through Future Ads, *see* Compl. ¶ 27, nowhere does it identify
19 which schools have directed lead generators not to use Future Ads, or any specific
20 contracts or prospective income sources that Future Ads has lost.

21                                    **ARGUMENT**

22 **I.    OMNIANGLE'S SPEECH IS PROTECTED BY THE ANTI-SLAPP**
23 **       STATUTE**

24       To satisfy the first prong of the anti-SLAPP statute, Defendants are required
25 to make "a threshold showing that the challenged cause of action is one arising
26 from protected activity."  *Navellier* v. *Sletten*, 29 Cal. 4th 82, 88, 124 Cal. Rptr. 2d
27 530, 535 (2002).  That burden is easily satisfied here:  the sole target of Plaintiff's
28 complaint is Omniangle's speech concerning a matter of public interest, namely

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

4

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

1  how colleges and universities advertise on the Internet in a responsible way.

2      The California Legislature has mandated that the anti-SLAPP statute "be

3  construed broadly."  § 425.16(a).  Consistent with that instruction, courts have held

4  that an issue of public interest under § 425.16(e)(4) "may encompass activity

5  between private people."  *Rivera* v. *First DataBank, Inc.*, 187 Cal. App. 4th 709,

6  716, 115 Cal. Rptr. 3d 1, 6 (4th Dist. 2010).  "[A]lthough matters of public interest

7  include legislative and governmental activities, they may also include activities that

8  involve private persons and entities, especially when a large, powerful organization

9  may impact the lives of many individuals."  *Cross* v. *Cooper*, 197 Cal. App. 4th

10  357, 372, 127 Cal. Rptr. 3d 903, 913 (6th Dist. 2011) (citation and internal

11  quotation marks omitted).  An "issue need not be 'significant' to be protected by the

12  anti-SLAPP statute" — although the issues here clearly are — "it is enough that

13  [the issue] is one in which the public takes an interest."  *Id.* at 373.  Omniangle's

14  speech, which is the only conduct targeted by the Complaint, concerns how large

15  educational institutions are marketed to the public on the Internet and therefore

16  involves an issue of public interest.

17      How educational institutions are marketed on the Internet is an issue of

18  public interest by any test.  It is a matter "of concern to a substantial number of

19  people," *Cross*, 197 Cal. App. 4th at 374, including both current students of the

20  institutions, potential students of the institutions, and federal and state regulators

21  and lawmakers.  As Plaintiff's Complaint notes, the Department of Education has

22  promulgated regulations prohibiting misrepresentations in the marketing of such

23  institutions.  Compl. ¶¶ 29-30.  Senator Tom Harkin recently undertook a two-year

24  Congressional oversight investigation of private-sector higher education, holding

25  six separate hearings on the topic.  That investigation culminated in the release of a

26  2012 report discussing the very type of Internet advertising at issue in this case,

27  reflecting the intense level of public discourse and interest in these issues.  *See*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

5

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

S. Comm. on Health, Education, Labor, and Pensions, 112th Cong., 1 For Profit

Higher Education: The Failure to Safeguard the Federal Investment and Ensure

Student Success, at 65-67 (Comm. Print 2012) (discussing Internet advertising of

schools by lead generators).  Even Plaintiff's own Complaint concedes a high level

of public interest in how schools are marketed on the Internet, *see* Compl. ¶ 28

("Recently, regulators *and the public* have scrutinized schools about whether their

marketing properly discloses the amount of debt a student may incur to complete

the education program and reasonable post-graduation job prospects.") (emphasis

added).

Whether certain types of programs should be characterized as "adware" is

also an issue of public interest.  In fact, the Federal Trade Commission has

undertaken to document the public discourse regarding "adware," issuing a report

reflecting the intense level of interest in the topic among diverse parties.  *See*, *e.g.*,

FTC Staff Report, *Monitoring Software on Your PC: Spyware, Adware, and Other*

*Software* (Mar. 2005), at 23, *available at*

http://www.ftc.gov/os/2005/03/050307spywarerpt.pdf ("In addition to hosting [a]

workshop, the FTC has encouraged a public dialogue about the distribution,

installation, and use of software programs such as spyware and adware").

That these issues are covered by the California anti-SLAPP statute is clear

from the case law in this district.  In *New.Net, Inc.* v. *Lavasoft*, a company that

downloaded software to individual computers through the Internet without the

computer user's consent or knowledge brought suit against a company that

produced and distributed software that located such programs, notified computer

users of their presence, and removed them at the user's direction.  The plaintiff

claimed that the defendant's software inaccurately associated it with "the worst of

the worst" Internet downloaders and alleged claims for unfair competition, trade

libel, and tortious interference with prospective economic advantage.  In deciding

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

6

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

1    an anti-SLAPP motion, the court had no problem concluding that the software

2    constituted speech "on an issue of public importance" — specifically, whether

3    certain computer programs are "surreptitiously downloaded" onto computers

4    without the users' consent.   356 F. Supp. 2d 1090, 1105 (C.D. Cal. 2004) (citing

5    *New.Net, Inc.* v. *Lavasoft*, 356 F. Supp. 2d 1071 (C.D. Cal. 2003) (earlier order

6    denying preliminary injunction and making more detailed findings concerning the

7    issue)).  Future Ads' Complaint in this case asserts similar causes of action and

8    makes similar allegations.  *See* Compl. ¶ 41.  There can be no doubt that if the

9    speech at issue in *New.Net, Inc*. was protected by the anti-SLAPP statute, the

10   speech at issue here is too.

## II.    BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM, IT SHOULD BE STRICKEN UNDER THE ANTI-SLAPP STATUTE

12          Defendants having satisfied the first prong of the anti-SLAPP statute, the

13   burden shifts to the Plaintiff to establish a probability of success on the merits of its

14   claims.  *See New.Net, Inc.*, 356 F. Supp. 2d at 1098.  Here, the Plaintiff cannot

15   possibly meet that burden under the anti-SLAPP statute because the Complaint is

16   deficient as a matter of law.[3]

### A.    Plaintiff Cannot Prevail on its Defamation Claims

18          Plaintiff's defamation claims fall for a host of reasons.  Plaintiff identifies

19   two types of allegedly defamatory statements in its Complaint:  "statements

20   describing ads displayed by Future Ads' App as 'potential violations' and as

21   'adware.'"  Compl. ¶¶ 91, 101.  The claims as to the word "adware" fall because the

22   word is not defamatory and, in any event, because it is an accurate descriptor for

23   Future Ads' activity, as Future Ads' own allegations reveal.  The claims regarding

24   "potential violations" fall because the phrase "potential violation" is a

---

[3] For the same reasons, the Complaint is also subject to dismissal for failure to state
a claim under Federal Rule of Civil Procedure 12(b)(6).  Defendants move in the
alternative for dismissal under that rule.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

7

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

1    nonactionable statement of opinion and because the Complaint fails to allege facts

2    that plausibly demonstrate that Omniangle's reports use the phrase in a defamatory

3    manner.  Plaintiff's defamation claims also fail because the Complaint fails

4    adequately to allege that the challenged statements were published with actual

5    malice.

### 1.    Plaintiff Has Not Pleaded Facts Sufficient to Plausibly Demonstrate that the Word "Adware" is Defamatory

8          A writing is defamatory if it "exposes any person to hatred, contempt,

9    ridicule, or obloquy, or . . . causes him to be shunned or avoided, or . . . has a

10   tendency to injure him in his occupation."  Cal. Civil Code § 45.  "Whether or not a

11   challenged statement is fairly susceptible of a defamatory meaning is a question of

12   law."  *Troy Group, Inc.* v. *Tilson*, 364 F. Supp. 2d 1149, 1155 (C.D. Cal.  2005).

13   "To defeat [a] motion to dismiss, plaintiff must show that the statement is

14   reasonably capable of sustaining a defamatory meaning."  *Cochran* v. *NYP*

15   *Holdings, Inc.*, 58 F. Supp. 2d 1113, 1121 (C.D. Cal. 1998), *aff'd and reasoning*

16   *adopted*, 210 F.3d 1036 (9th Cir. 2000).

17         A review of dictionary and encyclopedia definitions of "adware"

18   demonstrates that "adware" means precisely what it sounds like it should mean: ad-

19   supported software.  *See, e.g.*, Cambridge Dictionaries Online, "Adware,"

20   http://dictionary.cambridge.org/us/dictionary/business-english/adware?q=adware

21   (last visited July 31, 2013) ("[S]oftware that automatically puts advertisements onto

22   a computer."); Merriam-Webster Online, "Adware," http://www.merriam-

23   webster.com/dictionary/adware (last visited July 31, 2013) ("[C]omputer software

24   that is provided usually for free but contains advertisements."); PC Magazine

25   Encyclopedia, "Adware," http://www.pcmag.com/encyclopedia_term/

26   0,,t=&i=37577,00.asp (last visited July 31, 2013) ("Free software supported by

27   advertising messages.").  The Court may look to these definitions in ruling on

28   whether "adware" is fairly susceptible of a defamatory meaning at the pleading

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

8

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

1   stage.  *See generally Sliter* v. *Electronic Data Systems, Inc.*, 1996 WL 449189, at
2   *2 (N.D. Cal. Aug. 5, 1996) (referring to dictionary definitions in dismissing
3   claim).  Even Plaintiff's own Complaint confirms the non-defamatory nature of
4   "adware," noting that "the practice of displaying ads via software is commonplace
5   and widely accepted by major software developers, advertisers, and consumers."
6   Compl.  ¶ 45.  Indeed, the fact that Plaintiff was driven to allege that Omniangle's
7   statements characterizing Future Ads' online activities as "adware" are "libelous
8   per quod," Compl. ¶ 107, is itself an implicit concession that the word "adware" is
9   not defamatory per se.
10          In an effort to gin up a claim where none exists, Plaintiff suggests that
11  "adware" refers to "malicious software installed without user consent which
12  surreptitiously monitors the user's activity."  Compl. ¶ 41.  In support of that
13  definition, Plaintiff offers two cherry-picked and misrepresented sources, both of
14  which lump "spyware" and "adware" together, and define them together in a way
15  that suggests both terms refer to surreptitious monitoring from software installed
16  without a user's consent.  See Compl. ¶¶ 42-43.  Notably, neither definition cited in
17  the Complaint is for "adware" alone.  When "adware" is separately defined — see
18  the definitions cited above — it is clear that it does not mean what Plaintiff urges
19  that it means.  Even the sources cited by Plaintiff make this clear.  For example,
20  Princeton University's Office of Information Technology distinguishes "spyware"
21  from "adware" elsewhere on its website, noting that "[a]dware refers to programs
22  which gather information about you for marketing purposes in order to target your
23  computer with advertisements (often in the form of pop-up windows.)."  *See What*
24  *is Spyware/Adware? How Do I Safeguard Myself Against Spyware?* (July 13,
25  2009), http://helpdesk.princeton.edu/kb/display.plx?ID=9538 (last visited July 31,
26  2013).  Plaintiff's own touted source reveals the fallacy of its claims.
27          In short, simply referring to an activity as "adware" without more does not
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

9

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

suggest surreptitious monitoring, a lack of consent, or wrongdoing of any kind. Standing alone, the word "adware" is not defamatory.  A reader would need to know more.

But the Complaint here offers nothing more.  Because Plaintiff has chosen not to attach the actual statements it challenges to the Complaint — or even to describe their context — Plaintiff has failed to meet its burden of pleading facts from which one could plausibly conclude that "adware," as used in Omniangle's reports, has a defamatory meaning.  *See Ashcroft* v. *Iqbal*,  556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009); *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  As a result, the defamation claims based on the word "adware" should be dismissed.

### 2.    On Its Face the Complaint Demonstrates that Plaintiff's Activity Is "Adware"

Plaintiff's defamation claims also fail because a characterization of Future Ads' activities as "adware" is not a false statement; the allegations of the Complaint itself reveal that it is substantially true.  *See, e.g.*, Comp. ¶ 17 ("Future Ads operates an online-advertising platform which provides advertisers, the ability to connect with interested Internet users (*i.e.* consumers)."); *id.* ¶ 19 ("Users are invited to download and install Future Ads' web-browser plug-in application software (the 'App') in order to play premium and tournament games."); *id.* ¶ 21 ("Once installed, the App displays ads to users while browsing the Internet.  In exchange, the user receives free access to certain premium and tournament games.").  A quick comparison of the allegations of the Complaint with the definitions cited above confirms that Plaintiff itself describes its online activities consistent with the definitions of "adware."  As such, Plaintiff cannot sustain its burden of demonstrating that Omniangle's use of the term "adware" was false and cannot prevail on its defamation claims.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

DB1/ 75225974.1

10

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

### 3. The Phrase "Potential Violation" is a Non-actionable Statement of Opinion and Plaintiff Fails to Allege Facts That Plausibly Imply a Defamatory Meaning

Because the statement "potential violation" as used by Omniangle in its reports to its client is a subjective statement of opinion, it may not form the basis of a defamation claim either.  Statements of pure opinion are not actionable because they are protected by the First Amendment.  *See Global Telemedia International, Inc.* v. *Doe 1*, 132 F. Supp. 2d 1261, 1266-67 (C.D. Cal. 2001) (Carter, J.).  The Ninth Circuit considers certain factors relevant to whether a statement could imply "an assertion of objective fact":  "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Partington* v. *Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).  Information technology analyst's reports ranking a plaintiff's software product unfavorably and classifying it as "the same" as a competitor's have been found to be nonactionable opinions because they are "reflective of [the company's] subjective assessment" and are "not verifiable, provable facts." *ZL Technologies, Inc.* v. *Gartner, Inc.*, 709 F. Supp. 2d 789, 798 (N.D. Cal. 2010), *aff'd*, 433 Fed. Appx. 547 (9th Cir. 2011).  Likewise, courts have held that safety ratings are nonactionable opinions because they are subjective assessments not capable of being proved true or false.  *See Aviation Charter, Inc.* v. *Aviation Research Group/US*, 416 F.3d 864, 870 (8th Cir. 2005).  In each of these examples, even though the statements at issue involved an analysis of objective facts and verifiable data, they were held to be nonactionable opinions.

Applying this standard here, the phrase "potential violation" cannot be said to imply an assertion of an objective fact.  It is simply a shorthand used by Omniangle based upon its subjective assessments of the data it collects in the process of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

11

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

1   reporting to its clients; "potential violations" is not susceptible to being proved true

2   or false.  Rather, the statement reflects Omniangle's opinion that the client may

3   wish to conduct a further examination of the reported activity.  Saying that an ad

4   "may or may not be a violation" is not the kind of opprobrious statement on which

5   to ground a defamation claim.

6          Likewise, Plaintiff's claim that the term "potential violation" is defamatory

7   fails because the Complaint fails to allege facts from which one can plausibly infer

8   that it has defamatory meaning.  Plaintiff does not attach the allegedly offending

9   reports to the Complaint, does not provide the context of the phrase "potential

10  violations," and fails to allege facts that support the allegation that the phrase

11  implies that Future Ads' advertising platform is unlawful.  Compl. ¶ 4.  The

12  Defendants' reports are alleged to refer to ads displayed by Future Ads' platform as

13  "potential violations," *id.*, but the Complaint does not even provide context

14  sufficient to answer the question, "potential violations of what?"  Under *Iqbal* and

15  *Twombly*, that is not enough.  A plaintiff may not assert a libel by implication claim

16  and then fail to supply the necessary context to judge whether the statements at

17  issue have a defamatory meaning at all.  The defamation claims fail for this reason

18  as well.

19          **4.    The Complaint Fails to Allege Facts Sufficient to Establish
20                  Actual Malice**

21          Because the statements targeted by Plaintiff's Complaint relate to matters of

22  public concern and Plaintiff has not specifically pled facts sufficient to infer that the

23  statements were published with actual malice, Plaintiff's defamation claims further

24  fail.  Where alleged defamatory statements involve matters of public concern, they

25  are actionable only if the plaintiff pleads and proves that the defendant acted with

26  actual malice.  *See Miller* v. *Nestande*, 192 Cal. App. 3d 191, 197-98, 237 Cal.

27  Rptr. 359, 362 (4th Dist.1987); *Brown* v. *Kelly Broadcasting Co.*, 48 Cal. 3d 711,

28  747, 257 Cal. Rptr. 708, 730-31 (1989).  "Speech deals with matters of public

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

12

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'"  *Snyder* v. *Phelps*, 131 S. Ct. 1207, 1216, 179 L. Ed. 2d 172, 181 (2011) (quoting *Connick* v. *Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708, 719 (1983)).  As discussed extensively in Part I, *supra*, the broad topics of both adware and issues of Internet marketing by colleges and universities are matters of significant public interest.  Here, as in *New.Net*, the "speech touches on issues of public concern regarding various aspects of the internet."  356 F. Supp. 2d at 1105.

By failing to plead facts sufficient to give rise to an inference of actual malice, Plaintiff falls far short of the pleading requirements of *Iqbal* and *Twombly*. Such allegations must be supported by specific facts rather than general and conclusory statements.  *See Pham* v. *Bank of America, N.A.*, 2010 WL 3184263, at *5 (N.D. Cal. Aug. 11, 2010).  Yet Plaintiff's Complaint here contains only insufficient, boilerplate allegations of actual malice.  *See* Compl. ¶¶ 65, 94, 105.

## B.     Because Plaintiff's Defamation Claims Fall, So Too Do Its Remaining Claims

Plaintiff's claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, libel per quod and unfair competition all fail, just as its defamation claims do, because of Plaintiff's failure to allege facts sufficient to establish actual malice and because they are grounded in statements of nonactionable opinion.  Plaintiff may not skirt the constitutional protections set forth above in the context of defamation claims by calling its claims by another name.  *See generally Hustler Magazine, Inc.* v. *Falwell*, 485 U.S. 46, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988).  Because Plaintiff's claims are all based on the same allegedly defamatory statements, the same First Amendment protections apply to each of them.  *Blatty* v. *New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986) (in bank) ("[T]he limitations that define the First Amendment's zone of protection . . . apply to all claims whose gravamen is the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

13

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

alleged injurious falsehood of a statement . . . ."), *cert. denied*, 485 U.S. 934, 108 S. Ct. 1107, 99 L. Ed. 2d 268 (1988); *see also Christakis* v. *Mark Burnett Productions*, 2009 WL 1248947, at *5 (C.D. Cal. Apr. 27, 2009) ("Plaintiff's claim for tortious interference fails because it is grounded in the supposed defamation"). In short, "constitutional protection does not depend on the label given the stated cause of action." *Reader's Digest Assoc'n* v. *Superior Court*, 37 Cal. 3d 244, 265, 208 Cal. Rptr. 137, 151 (1984), *cert. denied sub nom. Synanon Church* v. *Reader's Digest Association, Inc.*, 478 U.S. 1009, 106 S. Ct. 3307, 92 L. Ed. 2d 720 (1986). *See Vogel* v. *Felice*, 127 Cal. App. 4th 1006, 1018, 26 Cal. Rptr. 3d 350, 359 (6th Dist. 2005) (failure to plead actual malice "constitutes a fatal defect as to all [plaintiffs'] claims" because "plaintiffs' entire case is predicated on such [allegedly defamatory] statements"); *Films of Distinction, Inc.* v. *Allegro Film Productions, Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) ("For all the reasons set forth above with respect to defamation, defendants' alleged statements concerning [plaintiff] . . . are opinions protected under the First Amendment. Accordingly, Plaintiff's trade libel claim is properly dismissed on this basis alone.").

### C. Plaintiff's Trade Libel and Defamation Per Quod Claims Also Fail Because Plaintiff has not Pleaded Special Damages

In addition to the deficiencies identified above, Plaintiff's claims for trade libel and defamation per quod must fall because Plaintiff has failed to plead special damages. Special damages are a required element of a claim for trade libel. *See New.Net, Inc.*, 356 F. Supp. 2d at 1113. The requirement that special damages be pleaded specifically is a matter of federal procedural law; "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g); *Isuzu Motors Ltd.* v. *Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998). Under this standard, "[i]f the plaintiff desired to predicate its right to recover damages upon general loss of custom[ers], it should have alleged facts showing an established business, the amount of sales for a substantial period

preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication," *New.Net*, 356 F. Supp. 2d at 1113 (quoting *Isuzu*, 12 F. Supp. 2d at 1047).

Here, Future Ads alleges damages arising from a general loss of customers and revenue, without specifying any sales figures before or after Omniangle's allegedly defamatory remarks. *See* Compl. ¶¶ 53-54, 58, 66-67. Just as in *New.Net*, Future Ads "does not even specify the amount of damage, and simply refers to an amount to be ascertained at trial," 356 F. Supp. 2d at 1113, adding only — in a clear nod to federal diversity requirements — that the damages "exceed[] $75,000." *See* Compl. ¶ 69. Just as in *New.Net*, "[g]iven that Plaintiff has failed to plead special damages, it cannot establish it has a probability of success on the merits with regard to its trade libel claim." 356 F. Supp. 2d at 1113.

Plaintiff's claim for defamation per quod likewise fails because it has neglected to plead special damages. "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof." Cal. Civil Code § 45a; *see also Newcombe* v. *Adolf Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1998) (affirming grant of summary judgment in favor of defendants where plaintiff "failed to prove that the allegedly defamatory meaning of the advertisement was apparent from its face, and . . . failed to prove special damages"); *Jamarillo* v. *Food 4 Less Madera*, 2010 WL 3717307, at *8 (E.D. Cal. Sept. 15, 2010) (dismissing defamation claim where allegations did not support per se claim and plaintiff failed to plead special damages).

### D.   Plaintiff's Intentional Interference Claims Also Fail Because The Complaint Fails to Identify any Contract or Economic Relationship with which Defendants Allegedly Interfered

Because Plaintiff fails to identify any specific contract or economic relationship with which the Defendants allegedly interfered, the Complaint states no

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

15

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

1    claim for intentional interference with contractual relations or intentional

2    interference with prospective economic advantage.  "The elements which a plaintiff

3    must plead to state the cause of action for intentional interference with contractual

4    relations are (1) a valid contract between plaintiff and a third party; (2) defendant's

5    knowledge of this contract; (3) defendant's intentional acts designed to induce a

6    breach or disruption of the contractual relationship; (4) actual breach or disruption

7    of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric*

8    *Co.* v. *Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, 270 Cal. Rptr. 1, 3-4 (1990).

9         Future Ads makes no sufficient allegations of a specific contract with a third

10   party, let alone a contract of which Defendants have knowledge.  The Complaint

11   makes only general reference to Future Ads' "advertiser customers," *see* Compl.

12   ¶¶ 1, 24, states that it "generates a major portion of revenue from lead generators,"

13   *id.* ¶ 26, and at least "one major lead generator" buys from Future Ads, *id.* ¶ 54, and

14   makes the conclusory allegation that it "has contracts with lead generators in the

15   education industry under which lead generators purchase advertising from Future

16   Ads." *Id.* ¶ 72.

17        These allegations are insufficient as a matter of law.  The failure to "allege

18   one single specific contract . . . [Plaintiff] either had or that was interrupted by the

19   Defendants' alleged actions" is "fatal to [Plaintiff's] claim." *Central Coast Pipe*

20   *Lining, Inc.* v. *Pipe Shield USA, Inc.*, 2013 WL 1703023, at *5 (C.D. Cal. Apr. 19,

21   2013).  Courts consistently dismiss claims for intentional interference with

22   contractual relations where the plaintiff fails to allege specific facts concerning the

23   contracts that were breached and the defendant's awareness of those contracts.  *See*,

24   *e.g.*, *Yagman* v. *Galipo*, 2013 WL 1287409, at *5 (C.D. Cal. Mar. 25, 2013)

25   (dismissing claim where plaintiff "fails to set forth the terms of the agreement [or]

26   explain exactly which terms were breached"); *F.M. Tarbell Co.* v. *A & L Partners,*

27   *Inc.*, 2011 WL 1153539, at *4 (C.D. Cal Mar. 23, 2011) (dismissing claim "[g]iven

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

16

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

the absence of specific facts establishing the existence of valid contracts with third parties and [defendant's] awareness of such contracts"). Since Plaintiff fails to allege any specific contract, it follows that it also fails sufficiently to allege breach or disruption of such a contract. *See Orchard Supply Hardware LLC* v. *Home Depot USA, Inc.*, 2013 WL 1563228, at *7 (N.D. Cal. Apr. 12, 2013) ("Plaintiff must plead sufficient factual allegations about the terms of its enforceable contracts, such that Defendants are sufficiently on notice to defend themselves from the claim of causing the breach or disruption of those contracts").

Plaintiff's claim for intentional interference with prospective economic relations fails for the same reasons. For such a claim, a plaintiff must plead "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co.* v. *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153, 131 Cal. Rptr. 2d 29, 45 (2003). In addition, for this claim "a plaintiff must plead that the defendant engaged in an independently wrongful act. . . . [A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1158-59.

Just as with its claim based on contractual relations, Future Ads makes no sufficient allegations of a specific economic relationship with a third party, let alone a relationship of which Defendants have knowledge. The Complaint makes general reference to Future Ads' "advertiser customers," Compl. ¶¶ 1, 24, states that it "generates a major portion of revenue from lead generators," *id.* ¶ 26, and makes the conclusory allegation that it "had economic relationships with its lead-generator

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

DB1/ 75225974.1

17

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

customers that probably would have resulted in economic benefit to Future Ads"
and that "Defendants knew of those relationships," *id.* ¶¶ 81-82.

Again, these allegations are insufficient as a matter of law.  A Complaint that
"fails to plead [defendant's] knowledge of an economic relationship between
[plaintiff] and a third party" and "merely states that [defendant] had knowledge of
economic relationships between [plaintiff] and [the third party] without any further
specific allegations" is legally insufficient.  *Capitol West Appraisals LLC* v.
*Countrywide Financial Corp.*, 467 Fed. Appx. 738, 740 (9th Cir. 2012); *see also*
*Sybersound Records, Inc.* v. *UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008)
(affirming dismissal where plaintiff "does not allege, for example, that it lost a
contract nor that a negotiation with a Customer failed"); *accord Kenner* v. *Kelly*,
2012 WL 553943, at *4 (S.D. Cal. Feb. 21, 2012) (dismissing prospective
economic advantage claim where "the Complaint does not specifically identify
existing or prospective economic relationships that were harmed by [defendant's]
actions").  Future Ads' one even arguably specific allegation — that "[a]t least one
major lead generator advised Future Ads that it may stop buying advertising from
Future Ads because 'several of our larger schools are *thinking about* blocking all
adware-based ads in our system,'" Compl. ¶ 54 (emphasis added), — transparently
fails to allege "actual disruption of the relationship," as is required.  *Korea Supply
Co.*, 29 Cal. 4th at 1153.

**E.    Plaintiff's Unfair Competition Claim Fails Because Plaintiff Has Not Alleged Adequately any "Unlawful, Unfair or Fraudulent Conduct"**

Finally, Plaintiff's unfair competition claim fails because it has not stated a
claim under California's Unfair Competition Law ("UCL"), which prohibits "any
unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code
§ 17200.  It appears that Plaintiff alleges only that Defendants violated the
"unlawful" prong of the UCL.  *See* Compl. ¶¶ 113-116.  An "unlawful" business

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES
DB1/ 75225974.1
18
MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

practice under the UCL includes "'anything that can properly be called a business practice and that at the same time is forbidden by law.'"  *Smith* v. *State Farm Mutual Automobile Insurance Co.*, 93 Cal. App. 4th 700, 717-18, 113 Cal. Rptr. 2d 399, 414 (2d Dist. 2001).  The UCL, therefore, "'borrows' violations of other laws and treats them as 'unlawful' practices independently actionable under the unfair competition law."  *Id.* (citations omitted); *see also Cel-Tech Communications, Inc.* v. *Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 560 (1999).  Thus, a UCL claim stands or falls with the viability of the underlying claim.  *See Krantz* v. *BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178, 107 Cal. Rptr. 2d 209, 219-20 (1st Dist. 2001).  If the complaint fails to state a violation of an underlying law, the claim on which it is premised must fail.  *Ingels* v. *Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1060, 28 Cal. Rptr. 3d 933, 938 (2d Dist. 2005).  Accordingly, California law requires that if a plaintiff alleges an unlawful business act or practice by defendant, then plaintiff must specifically allege:  (a) which laws defendant violated; and (b) facts supporting the alleged violation.  *Khoury* v. *Maly's, Inc.*, 14 Cal. App. 4th 612, 619, 17 Cal. Rptr. 2d 708, 712 (2d Dist. 1993).

Plaintiff's UCL claim fails because it does not specify any laws that the Defendants allegedly violated.  Plaintiff alleges that because Defendants are not lawyers, they are not "qualified" to provide advice about "compliance with state and federal regulations."  Compl. ¶¶ 113-114.  Plaintiff cites no law, statute or regulation Defendants have violated that would constitute the unauthorized practice of law.  Plaintiff does not — and cannot — allege that Defendants' actions are "unlawful," as reflected in the Complaint itself, which states that the advice at issue "*probably* constitutes the unauthorized practice of law . . . ."  *Id.* ¶ 116 (emphasis added).  Further, Plaintiff fails to allege any facts to support the assertion that the provision of compliance reports by non-lawyers is unlawful.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

19

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

CASE 8:13-cv-00905-DOC-JPR   Document 17-1   Filed 08/01/13   Page 27 of 28   Page ID #:90

Nor may Plaintiff attempt to tether its UCL claim to its trade libel, intentional interference with contractual relations, intentional interference with prospective economic advantage, libel per se or libel per quod claims.  Under California law, any defense to the predicate law underlying the "unlawful" claim is also a defense to the Section 17200 action.  *See Hobby Industry Ass'n of America* v. *Younger*, 101 Cal. App. 3d 358, 372, 161 Cal. Rptr. 601, 161 Cal. Rptr. 601, 609 (2d Dist. 1980); *see also, supra*, Parts II.A-D.

Although Plaintiff's Complaint appears not to assert a UCL claim based on the "unfair" or "fraudulent" prongs of the statute, Plaintiff fails to plead any allegations in support of a claim based on those prongs in any event.  Plaintiff does not allege that Defendants' actions were anti-competitive or significantly threatened or harmed competition.  *See Cel-Tech*, 20 Cal. 4th at 187.  Nor does Plaintiff allege that "members of the public are likely to be deceived" by Defendants' conduct or that the public had an expectation about the matter at issue.  *See Committee on Children's Television, Inc.* v. *General Foods Corp.*, 35 Cal. 3d 197, 211, 197 Cal. Rptr. 783, 791 (1983) (superseded by statute on other grounds); *In re Insurance Installment Fee Cases*, 211 Cal. App. 4th 1395, 1416, 150 Cal. Rptr. 3d 618, 634 (4th Dist. 2012).  Plaintiff's UCL allegations therefore fail in their entirety.

## III.   THE COURT SHOULD AWARD DEFENDANTS THEIR ATTORNEYS' FEES UNDER THE ANTI-SLAPP STATUTE

Because Defendants have demonstrated that Plaintiff's Complaint is a meritless one targeted at speech that is protected under the anti-SLAPP statute, Defendants are also entitled to recover their attorneys' fees and costs related to bringing this motion.  *See* Cal. Code Civ. Proc. § 425.16(c)(1) ("a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs").  "Awarding reasonable attorneys' fees and costs to the prevailing party on an anti-SLAPP motion is mandatory under § 425.16(c)(1)." *Blackburn* v. *ABC Legal Services, Inc.*, 2012 WL 1067632, at *3 (N.D. Cal. Feb.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

20

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)

1  24, 2012).  Defendants respectfully request the entry of an Order awarding their

2  fees and expenses in an amount to be determined by the Court.

3                                  **CONCLUSION**

4          The Complaint should be stricken pursuant to Cal. Code of Procedure

5  § 425.16 or, in the alternative, dismissed with prejudice pursuant to Fed. R. Civ. P.

6  12(b)6.

7

8  Dated:  August, 1 2013              MORGAN, LEWIS & BOCKIUS LLP
                                       BRIAN M. JAZAERI
9                                      ESTHER K. RO

10

11                                  By    /s/
                                          BRIAN M. JAZAERI
12                                        Attorneys for Defendants
                                          JONATHAN L. GILLMAN and
13                                        OMNIANGLE TECHNOLOGIES,
                                          LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 75225974.1

21

MEMO IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE/DISMISS COMPL.
CASE NO. 8:13-CV-00905-DOC-(JPRX)