1   Derek A. Newman, State Bar No. 190467
    *derek@newmanlaw.com*
2   NEWMAN DU WORS LLP
    100 Wilshire Boulevard, Suite 950
3   Santa Monica, CA  90401
    Telephone:  (310) 359-8200
4   Facsimile:   (310) 359-8190

5   John Du Wors, State Bar No. 233913
    *duwors@newmanlaw.com*
6   Derek Linke, *pro hac vice*
    *linke@newmanlaw.com*
7   NEWMAN DU WORS LLP
    1201 Third Avenue, Suite 1600
8   Seattle, WA  98101
    Telephone:  (206) 274-2800
9   Facsimile:   (206) 274-2801

10  Attorneys for Plaintiff
    FUTURE ADS LLC

11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                   SOUTHERN DIVISION

15

16  FUTURE ADS LLC,                 No.: SACV 13-00905 DOC(JPRx)

17          Plaintiff,              **PLAINTIFF FUTURE ADS
                                    LLC'S OPPOSITION TO
18      v.                          DEFENDANTS' MOTION TO
                                    STRIKE COMPLAINT, OR IN
    JONATHAN L. GILLMAN, et al.     THE ALTERNATIVE, TO
19                                  DISMISS PLAINTIFF'S
          Defendants.              COMPLAINT**
20

21                                  Date:      September 9, 2013
                                    Time:      8:30 a.m.
22                                  Dept.:     Courtroom 9D
                                    Judge:     Honorable David O. Carter
23                                  Action Filed: June 14, 2013

24

25

26

27

28

                                     i

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   ISSUES .................................................................................................. 2

III.  FACTS ...................................................................................................3

      A.    Omniangle provides legal-compliance services but its employees
            are not lawyers. ...........................................................................3

      B.    "Adware" has a pejorative meaning because it is generally
            understood to refer to malicious software. ..........................................3

      C.    Future Ads provides free online games supported by
            advertising, and lead generators advertise through Future Ads
            to find potential students for schools...................................................5

      D.    Omniangle reported to schools that Future Ads' service is
            adware and a potential violation, causing harm to Future Ads'
            business and relationships................................................................ 6

IV.   DISCUSSION ........................................................................................7

      A.    Omniangle's conduct is not entitled to anti-SLAPP protection
            because it is not protected speech under the statute, and Future
            Ads' claims have merit........................................................................7

      B.    Future Ads' claims have the "minimal merit" required to
            survive an anti-SLAPP analysis. ........................................................14

      C.    The Court should deny Omniangle's alternative motion to
            dismiss because Future Ads properly stated its claims. ................... 20

      D.    The Court should allow Future Ads to conduct discovery if the
            Court is not prepared to deny the motion on the current record........21

V.    CONCLUSION...........................................................................................21

PL. FUTURE ADS LLC'S RESPONSE TO DEFS.' SPECIAL MOTION TO STRIKE

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ......................................21

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...........................20

*Baldwin v. Marina City Props., Inc.,*
    79 Cal. App. 3d 393, 145 Cal. Rptr. 406 (1978) .....................................18

*Bank of the West v. Superior Court,*
    2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992) .........................................19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...........................20

*Bently Reserve LP v. Papaliolios,*
    2013 Cal. App. LEXIS 601 (2013) ......................................16

*Broam v. Bogan,*
    320 F.3d 1023 (9th Cir. 2003) ......................................20

*Bronco Wine Co. v. Frank A. Logoluso Farms,*
    214 Cal. App. 3d 699, 262 Cal. Rptr. 899 (1989) .....................................19

*Brown v. Kelly Broad. Co.,*
    48 Cal. 3d 711, 257 Cal. Rptr. 708 (1989) ......................................17

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund,*
    24 Cal. 4th 800, 102 Cal. Rptr. 2d 562 (2001).....................................18

*City of Costa Mesa v. D'Alessio Invs., LLC,*
    214 Cal. App. 4th 358, 154 Cal. Rptr. 3d 698 (2013).....................................14

*Duncan v. Stuetzle,*
    76 F.3d 1480 (9th Cir. 1996) ......................................19

*Equilon Enters. v. Consumer Cause, Inc.,*
    29 Cal. 4th 53, 124 Cal. Rptr. 2d 507 (2002) ..........................................7

*Erlich v. Etner,*
    224 Cal. App. 2d 69, 36 Cal. Rptr. 256 (1964) .....................................17

*Fellows v. Nat'l Enquirer,*
    42 Cal. 3d 234, 228 Cal. Rptr. 215 (1986).....................................17

*Fla. Bar v. Catarcio,*
    709 So. 2d 96, 100 (Fla. 1998) ......................................9

*Fla. Bar v. Schramek,*
    616 So. 2d 979 (Fla. 1993) ......................................9

*Flatley v. Mauro,*
  39 Cal. 4th 299, 46 Cal. Rptr. 3d 606 (2006) ...................................... 8

*Franklin v. Dynamic Details, Inc.,*
  116 Cal. App. 4th 375, 10 Cal. Rptr. 3d 429 (2004) ........................... 15

*Gerbosi v. Gaims, Weil, West & Epstein, LLP,*
  193 Cal. App. 4th 435, 122 Cal. Rptr. 3d 73 (2011) ............................. 9

*Hilton v. Hallmark Cards,*
  599 F.3d 894 (9th Cir. 2010) ...............................................passim

*Howard v. Superior Court,*
  52 Cal. App. 3d 722, 125 Cal. Rptr. 255 (1975) ..................................... 8

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons,*
  140 Cal. App. 4th 515, 44 Cal. Rptr. 3d 517 (2006) ........................... 16

*MacLeod v. Tribune Publ'g Co.,*
  52 Cal. 2d 536 (1959). .............................................................. 15

*Makaeff v. Trump Univ., LLC,*
  715 F.3d 254 (9th Cir. 2013) .............................................. 7, 12

*Mann v. Quality Old Time Serv., Inc.,*
  120 Cal. App. 4th 90, 15 Cal. Rptr. 3d 215 (2004) .................. 14, 15, 17

*Metabolife Int'l, Inc. v. Wornick,*
  264 F.3d 832 (9th Cir. 2001) ...................................................... 21

*Mindys Cosmetics, Inc. v. Dakar,*
  611 F.3d 590 (9th Cir. 2010) .................................................... 14

*Morongo Band of Mission Indians v. Rose,*
  893 F.2d 1074 (9th Cir. 1990) .................................................. 20

*Navellier v. Sletten,*
  29 Cal. 4th 82, 124 Cal. Rptr. 2d 530 (2002) ...................................... 8

*New.net, Inc. v. Lavasoft,*
  356 F. Supp. 2d 1090 (C.D. Cal. 2004) ........................................ 13

*Podolsky v. First Healthcare Corp.,*
  50 Cal. App. 4th 632, 58 Cal. Rptr. 2d 89 (1996) ............................. 19

*Polygram Records, Inc. v. Superior Court,*
  170 Cal. App. 3d 543, 216 Cal. Rptr. 252 (1985) ............................. 15

*Rivero v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO,*
  105 Cal. App. 4th 913, 130 Cal. Rptr. 2d 81 (2003) .....................10, 11

*State Bar of Cal. v. Superior Court of Los Angeles Cnty.,*
  207 Cal. 323 (1929) ................................................................ 9

*State Farm Fire & Cas. Co. v. Superior Court,*
  45 Cal. App. 4th 1093, 53 Cal. Rptr. 2d 229 (1996) ......................... 19

*Verizon Del., Inc. v. Covad Commc'ns Co.*,
    377 F.3d 1081 (9th Cir. 2004) ........................................................ 20

*Weinberg v. Feisel*,
    110 Cal. App. 4th 1122, 2 Cal. Rptr. 3d 385 (2003)................................. 10, 11, 12

*Weller v. ABC*,
    232 Cal. App. 3d 991, 283 Cal. Rptr. 644 (1991).................................. 16

*Wilson v. Parker, Covert & Chidester*,
    28 Cal. 4th 811, 123 Cal. Rptr. 2d 19 (2002) ....................................... 14

## Statutes

37 C.F.R. 2.20 ................................................................................ 8

Cal. Bus. & Prof. Code § 17200 ........................................................ 19

Cal. Bus. & Prof. Code § 6125 .......................................................... 19

Cal. Bus. & Prof. Code § 6126(a) ...................................................... 8

Cal. Civ. Code § 45a ...................................................................... 15

Cal. Civ. Code § 46 ........................................................................ 15

Cal. Civ. Proc. Code § 425.16(e) ....................................................... 9

Cal. Civ. Proc. Code § 425.16(e)(3) ................................................... 13

Cal. Civ. Proc. Code § 425.16(e)(4) ................................................... 10

Fla. Stat. § 454.23 ......................................................................... 8

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................... 20

Fed. R. Civ. P. 15(a) ...................................................................... 20

Fed. R. Civ. P. 56 .......................................................................... 21

Fed. R. Evid. 201............................................................................ 3

PL. FUTURE ADS LLC'S RESPONSE TO DEFS.' SPECIAL MOTION TO STRIKE

## I.   Introduction

The Court should deny Omniangle's motion because the anti-SLAPP statute does not apply to unlawful activity, and it only applies to speech "in connection with a public issue or an issue of public interest". Omniangle's conduct at issue was unlawful—it engaged in the unauthorized practice of law. Omniangle describes its services "reviewing standards and practices to assure compliance with state and federal regulations" which is the service that a lawyer would typically provide. And Omniangle's conduct was not in connection with any public issue, nor was it about misrepresentations in school advertising. Rather, Omniangle made false statements to a handful of its customers about Future Ads' ad-delivery service impacting only Future Ads, a lead generator, and a school.

In addition, the Court should deny Omniangle's motion because Future Ads is likely to prevail on each of its claims. Omniangle bases its motion on a conclusory argument that "adware" is not defamatory and "potential violations" is mere opinion. But uncontroverted expert testimony concludes that "adware" means harmful and malicious software, and that Future Ads does not provide adware. And binding case law holds that couching a defamatory statement in a qualification like "potential" does not insulate the defendant from liability.

Omniangle sold legal-compliance services to schools that it was not qualified to provide, and it harmed Future Ads in the process. The anti-SLAPP statute was intended to protect "ordinary people from exercising their political or legal rights". The law was not meant to shield a business providing unlawful professional services from liability for a statement directed at a particular person. Thus, the Court should deny Omniangle's anti-SLAPP motion.

## II.   Issues

**1. Unlawful Conduct.** The anti-SLAPP law does not apply to the unauthorized practice of law. This case arises out of Omniangle's reviewing "standards and practices to assure compliance with state and federal regulations" when it is not a law firm. Does the anti-SLAPP statute apply?

**2. Public Interest.** The anti-SLAPP law only applies to a matter of public interest concerning to a substantial number of people and not just the speaker and a small, specific audience. The focus of the defendant's conduct must be the public interest at large. Omniangle's conduct does not impact the public because it is only concerning to a lead generator, school, and Future Ads—and the focus is only on Future Ads. Does the anti-SLAPP statute apply?

**3. Defamation and Trade Libel.** Defamation and trade libel occur when the defendant publishes a false statement that disparages the plaintiff's business and causes the plaintiff harm. Omniangle published that Future Ads' service is a potential violation and adware, which means harmful and malicious software, even though the service is neither adware nor a potential violation. Future Ads lost business as a result. Is Omniangle liable for defamation and trade libel?

**4. Actual Malice.** For defamation, a plaintiff is not required to prove actual malice unless it is a public figure. California has no public-interest privilege. Even when a public interest is at issue, "private persons need prove only negligence (rather than malice) to recover for defamation." Future Ads is not a public figure. Must Future Ads show actual malice?

**5. Unfair Competition.** California unfair competition requires that the defendant engaged in an unlawful, unfair, or fraudulent business act. Omniangle engaged in unlawful legal practice, unfairly caused Future Ads to lose business by defaming its product, and fraudulently marketed itself as an expert in state and federal regulations when it is not qualified to provide those services. Is Omniangle liable for unfair competition?

PL. FUTURE ADS LLC'S RESPONSE TO DEFS.' SPECIAL MOTION TO STRIKE

## III.  Facts

### A.   **Omniangle provides legal-compliance services but its employees are not lawyers.**

Omniangle is a Florida-based company that describes its services in its federal-trademark registration as "reviewing standards and practices to assure compliance with state and federal regulations." *See* U.S. Trademark Registration No. 3,844,560[1]. Omniangle does not specify on its website or in its motion which specific state and federal regulations it advises about, cryptically referring to "a variety of compliance monitoring and data analysis services for many companies that advertise online". Defs' Mot. (Dkt. 17-1) at 3:11–12. Omniangle also claims to provide "actionable intelligence" and "identify cybersecurity threats in real time." Declaration of Michael Rosenberg ("Rosenberg Decl.") ¶¶ 45–46, Exhibits C–D. Neither Omniangle's CEO, Defendant Jonathan Gillman, nor any of its employees are attorneys.

Omniangle provides legal-compliance services to for-profit schools, and furnishes these clients with written reports "summarizing the results of [Omniangle's] monitoring efforts". Defs' Mot. (Dkt. 17-1) at 3:11–18. This case arises out of Omniangle reports mislabeling Future Ads' services as "adware" and as "potential violations." *See*, *e.g.*, Compl. (Dkt. 1) ¶¶ 3–4.

### B.   **"Adware" has a pejorative meaning because it is generally understood to refer to malicious software.**

Lexicographer Orin Hargraves is an expert in examining what words mean. Declaration of Orin Hargraves ("Hargraves Decl.") ¶¶ 2–3. Most major publishers—including Merriam-Webster, Oxford, Cambridge, Longman, Harrap, Collins, and Scholastic—have hired Hargraves to write definitions for their

---

[1] Future Ads requests the Court take judicial notice under Fed. R. Evid. 201 of Omniangle's federal-trademark registration. A copy of the registration is attached as Exhibit G to the Declaration of Michael Rosenberg.

1    dictionaries. *Id.* ¶ 3.

2    To study the word *adware*, Hargraves queried three separate language

3    collections drawn from a broad range of genres—known as corpora—containing

4    over 27-billion words. *Id.* ¶ 7. He analyzed nearly 20,000 sentences containing

5    *adware* enabling him to "develop a very fine-grained and definitive portrait" of the

6    word. *Id.* ¶ 9. Hargraves concludes that the meaning of the word *adware* is

7    overwhelmingly associated with negative sentiments. *Id.* ¶ 20.

8    The distributional synonyms most closely associated with *adware* are *spyware*,

9    *malware*, and *virus*. *Id.* ¶ 3. The verb most likely to be a direct object for *adware* is

10   *remove*. *Id.* ¶ 14. In sentences where *adware* is the subject, the most common verb is

11   *infect*. *Id.* ¶ 15. The sentiment-bearing adjectives that occurred three or more times

12   across all the corpora include: *malicious*, *unwanted*, *harmful*, *fake*, *sneaky*, *shady*,

13   *annoying*, *dangerous*, and *controversial*. *Id.* ¶ 16.

14   Hargraves did not find any positive-sentiment adjectives that modify *adware* in

15   any of the 20,000 examples he studied. *Id.* ¶ 16. Due to the frequent co-occurrence

16   of *adware* with *malware*, *spyware*, and *virus,* Hargraves concludes that people think

17   of these four things as the same. *Id.* ¶ 18. He further concludes that the

18   overwhelming association of negative-sentiment adjectives with *adware*—and the

19   absence of any positive ones—make clear that most uses of the word *adware* is used

20   in a negative way and that its meaning is overwhelmingly associated with a negative

21   sentiment. *Id.* ¶ 20.

22   Chuck Easttom is a computer-security expert with over 20 years' experience.

23   Declaration of William C. ("Chuck") Easttom II ("Easttom Decl.") ¶ 2. Easttom

24   wrote 15 computer-science books, including two computer-security textbooks used

25   by universities around the world. *Id.* ¶ 2. He holds 28 computer-industry

26   certifications. *Id.* ¶ 2. Easttom has provided computer-security training to

27   universities, private corporate clients, and the United States Secret Service. *Id.* ¶ 2.

28   Easttom concludes that "[i]t is clear from both documentary evidence and

4

1   from my professional experience that both the general public and computer

2   professionals view adware as a form of malware that is potentially harmful to their

3   system." *Id.* ¶ 11.

4

5       **C.   Future Ads provides free online games supported by advertising, and
6   lead generators advertise through Future Ads to find potential
           students for schools.**

7       Future Ads offers free Internet-based games. Declaration of Michael

8   Rosenberg ("Rosenberg Decl.") ¶¶ 3–4. Game players who are interested in

9   premium games may choose to install Future Ads' software (the "App"). *Id.* ¶ 5.

10  The user may voluntarily allow the App to display advertisements when the user

11  visits websites, in exchange for access to Future Ads' premium games. *Id.* ¶¶ 5–6.

12      Computer-security expert Easttom downloaded and installed Future Ads'

13  App and evaluated it using industry-standard techniques for testing computer-

14  system behavior and effects. Easttom Decl. ¶¶ 13–16. Easttom concluded that

15  Future Ads' App is not "adware" as the term is commonly used or understood

16  because it does not have any of adware's characteristics. *Id.* ¶ 17. For example, the

17  App does not surreptitiously monitor or record user computer activity, including

18  key strokes, web use, emails, or other activity, *id.* ¶ 17; is not identified as a virus by

19  standard computer-security software, *id.* ¶ 17; does not surreptitiously transmit

20  data, *id.* ¶ 17; does not affect computer performance, *id.* ¶ 18; does not consume

21  excessive system resources, *id.* ¶ 18; is easy to uninstall, *id.* ¶ 19; and causes

22  absolutely no harm or disruption to the system, *id.* ¶ 20.

23      Future Ads does not create or design any advertising that the App displays.

24  Rosenberg Decl. ¶ 20. Rather, it sells advertising space to clients interested in

25  reaching users. *Id.* ¶ 20. The advertisers are responsible for all advertising content.

26  *Id.* ¶ 20.

27      Some of Future Ads' advertisers are lead generators. *Id.* ¶ 21. A lead generator

28  connects Internet users looking for services with companies that provide those

1   services. *Id.* ¶ 22. Lead generators advertise through Future Ads to find potential

2   customers for schools. *Id.* ¶¶ 24–27. A lead generator's ad directs users to its

3   website with information about educational opportunities. *Id.* ¶ 27. If a user would

4   like to receive information from a school, the user may submit contact information

5   through the lead generator's website. *Id.* ¶ 29. The lead generator then forwards

6   the information, known as a "lead", to schools such as the University of Phoenix,

7   DeVry University, or Strayer University—in exchange for a fee. *Id.* ¶ 30. The

8   schools use leads to identify potential customers interested in school programs. *Id.*

9   ¶ 29. Future Ads is never involved in the schools' marketing or the content of lead

10   generators' ads or websites. *Id.* ¶ 29.

11

12   **D.  Omniangle reported to schools that Future Ads' service is adware**
13   **and a potential violation, causing harm to Future Ads' business and**
     **relationships.**

14       In late 2012, lead generators began contacting Future Ads to complain that

15   Omniangle had submitted reports to schools advising that advertising through

16   Future Ads was a potential violation and adware. *Id.* ¶ 31. Lead generators have

17   forwarded some of those reports to Future Ads. *Id.* ¶ 32. For example in May 2012,

18   Classes USA forwarded to Future Ads an excerpt from an Omniangle report

19   referring to Future Ads as "Potential Violations" and "adware." *Id.* ¶ 32, Exhibit

20   B. The report did not explain the nature of the potential violations or any cyber-

21   security threat, nor did it identify state or federal regulations violated. *Id.* Due to

22   Omniangle reports, the schools imposed restrictions on lead generators'

23   advertising through Future Ads. *Id.* ¶ 37.

24       Omniangle prepared and provided each report to a single client about a single

25   Future Ads advertisement. *See id.* ¶ 33. Omniangle could only have viewed the ads

26   identified in its reports if it had installed the App—and those ads may not have

27   been displayed to any person other than to Omniangle when it visited that website.

28   *Id.* ¶ 34. Until Omniangle began reporting to the schools, Future Ads never

PL. FUTURE ADS LLC'S RESPONSE TO DEFS.' SPECIAL MOTION TO STRIKE

1  received a complaint from any school or their lead generators that Future Ads
2  service is adware or a potential violation. *Id.* ¶ 36.

3      Recently, lead generators reduced and in some cases stopped business entirely
4  with Future Ads because Omniangle alleged compliance issues that it raised to the
5  schools relating to adware and potential violations. *See id.* ¶ 37. As a result, Future
6  Ads lost at least $1.5 million in revenue since January 2013—and the losses will
7  continue so long as the schools believe the App is adware or a potential violation.
8  *See id.* ¶¶ 39–44; *see also* Declaration of Stephan Serfontein ("Serfontein Decl.")
9  ¶ 18. In contrast, Future Ads has experienced either increased or maintained
10 advertising levels in markets other than education. Rosenberg Decl. ¶¶ 43–44;
11 Serfontein Decl. ¶ 18.

12     Future Ads submits the declaration of its Vice President of Finance, Stephan
13 Serfontein. Serfontein identifies specific Future Ads clients and—under seal—the
14 amount of revenue that Future Ads lost for each client due to Omniangle's reports.
15 *See* Serfontein Decl. ¶¶ 6–18.

16

17 **IV.  Discussion**

18     **A.  Omniangle's conduct is not entitled to anti-SLAPP protection**
19         **because it is not protected speech under the statute, and Future Ads'**
           **claims have merit.**

20     The anti-SLAPP law provides limited protection against abusive lawsuits filed
21 "to deter ordinary 'people from exercising their political or legal rights or to punish
22 them for doing so.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir.
23 2013) (citations omitted). An anti-SLAPP motion requires a two-step analysis.
24 *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). First, the defendant
25 must show that the lawsuit arises from the defendant's acts in furtherance of its
26 protected constitutional rights as defined in the statute. *Id.* at 903 (quoting *Equilon*
27 *Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 124 Cal. Rptr. 2d 507 (2002). Courts
28 must "do more than simply rubberstamp" a defendant's assertions that its conduct

1  is protected. *See Flatley v. Mauro*, 39 Cal. 4th 299, 317, 46 Cal. Rptr. 3d 606 (2006).

2  Second, even if the defendant makes that showing, the court must still deny the

3  motion if the plaintiff demonstrates that its claims have at least "minimal merit."

4  *See Navellier v. Sletten*, 29 Cal. 4th 82, 89, 93–94, 124 Cal. Rptr. 2d 530 (2002).

5      In applying California's anti-SLAPP law, federal courts must follow the

6  California Supreme Court and the state's intermediate courts of appeal. *See Hilton*,

7  599 F.3d at 905–06.

8

9          **1.    The anti-SLAPP statute does not apply because Omniangle's**
           **conduct was illegal—arising out of its unauthorized practice of**
10         **law.**

11      The anti-SLAPP statute does not protect illegal speech. *See Flatley*, 39 Cal. 4th

12  at 314, 320. "Protection for free speech does not extend to the delivery of

13  legal…advice by persons not licensed to give such advice". *Howard v. Superior*

14  *Court*, 52 Cal. App. 3d 722, 726, 125 Cal. Rptr. 255 (1975). Omniangle describes its

15  services in its trademark registration—under penalty of perjury[2]—as "reviewing

16  standards and practices to assure compliance with state and federal regulations."[3]

17  These services are precisely what lawyers do, and California and Florida prohibit

18  non-lawyers from rendering legal advice. *See* Fla. Stat. § 454.23 ("Any person not

19  licensed or otherwise authorized to practice law in [Florida] who practices law in

20  [Florida] … commits a felony of the third degree…."; Cal. Bus. & Prof. Code

21  § 6126(a) ("Any person … practicing law who is not an active member of the State

22  Bar, or otherwise authorized pursuant to statute or court rule to practice law in

23  [California] at the time of doing so, is guilty of a misdemeanor….")

24

25  [2] *See* Trademark Manual of Examining Procedure, § 804.01(b); 37 C.F.R. 2.20.

26  [3] Omniangle's federal trademark registration is the only record of Omniangle's
    services, so the Court "may therefore view this evidence as uncontroverted".
27  *Flatley*, 39 Cal. 4th at 328–29. If Omniangle attempts to introduce new evidence on
    reply, Future Ads requests that the Court disregard it.

28

1   In Florida, where Omniangle is based, only members of the Florida bar may

2   "advis[e] customers of their rights, duties and responsibilities under Florida or

3   federal law." *See, e.g.*, *Fla. Bar v. Catarcio*, 709 So. 2d 96, 100 (Fla. 1998). This

4   restriction applies to services that "require a knowledge of the law greater than that

5   possessed by the average citizen." *See, e.g.*, *Fla. Bar v. Schramek*, 616 So. 2d 979,

6   984 (Fla. 1993). In California, only lawyers may provide "legal advice and counsel"

7   relating to matters impacting legal rights. S*tate Bar of Cal. v. Superior Court of Los*

8   *Angeles Cnty.*, 207 Cal. 323, 334–35 (1929).

9   When Omniangle provides services to "assure compliance with state and

10  federal regulations" (*See* U.S. Trademark Registration No. 3,844,560) it is

11  "advising customers of their rights, duties and responsibilities under [state] or

12  federal law." *See, e.g., Catarcio*, 709 So. 2d at 100. And since businesses generally

13  turn to lawyers to advise about legal compliance, Omniangle's services require "a

14  knowledge of the law greater than that possessed by the average citizen." *See*

15  *Schramek*, 616 So. 2d at 984.

16  Future Ad pleads that Omniangle's conduct constitutes the illegal practice of

17  law—a criminal activity. The anti-SLAPP statute does not apply when the plaintiff

18  alleges criminal activity, even if the defendant denies wrongdoing. *Gerbosi v. Gaims,*

19  *Weil, West & Epstein, LLP*, 193 Cal. App. 4th 435, 446, 122 Cal. Rptr. 3d 73 (2011)

20  ("A showing that a defendant did not do an alleged activity is not a showing that

21  the alleged activity is a protected activity [under the anti-SLAPP statute].") Since

22  Future Ads' complaint alleges that Omniangle committed a criminal violation, the

23  anti-SLAPP statute cannot apply.

24      **2.    The anti-SLAPP statute does not apply because Omniangle's**
25      **conduct was not "in connection with a public issue or an issue**
        **of public interest".**

26  The anti-SLAPP statute applies to claims arising from acts "in connection

27  with a public issue" that satisfy one of four statutory categories. Cal. Civ. Proc.

28  Code § 425.16(e). Omniangle only cites the "catchall" fourth category, applying to

9

conduct in connection with "a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4).

The Ninth Circuit noted that two California standards exist for determining what constitutes a public issue or issue of public concern—*Rivero* and *Weinberg*. *Hilton*, 599 F.3d at 906 (Analyzing public-issue standards under *Rivero v. American Federation of State, Count. & Municipal Employees, AFL-CIO*, 105 Cal. App. 4th 913, 130 Cal. Rptr. 2d 81 (2003) and *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 2 Cal. Rptr. 3d 385 (2003).)

### a. Omniangle's conduct is not a public issue under *Rivero*.

Under the *Rivero* standard, "public issues" include "(1) statements 'concern[ing] a person or entity in the public eye', (2) 'conduct that could directly affect a large number of people beyond the direct participants,' (3) 'or a topic of widespread, public interest.'" *Hilton*, 599 F.3d at 908 (quoting *Rivero*, 105 Cal. App. 4th at 924). But even where conduct implicates a public policy, "activity below some threshold level of significance is not an issue of public interest." *Rivero*, 105 Cal. App. 4th at 924.

In *Rivero*, a janitorial supervisor at a public university sued a labor union for defamation after it published statements in newsletters and petitions accusing him of theft, bribery, and abusive management. *Id.* at 916–17. The union filed an anti-SLAPP motion under the "catchall" category. *Id.* The defendant linked the dispute to a public issue by arguing that the "abusive supervision of employees throughout the University of California system is an issue of particular public interest because it impacts a community of public employees numbering 17,000." *Id.* at 919. It claimed that "unlawful workplace activity is a matter of public interest particularly where it occurs at a publicly financed institution." *Id.* But the court limited its anti-SLAPP inquiry to the facts that *directly* gave rise to plaintiff's claims, and denied the motion. *See id.* at 924–25.

Omniangle's defamatory statements about Future Ads are farther removed

1  from an issue of public interest than those in *Rivero*. The *Rivero* court rejected the

2  union's position that "any time a person criticizes an unlawful workplace activity

3  the statements concern a public issue," because under that standard every

4  workplace dispute would be a matter of public interest. *Id.* at 924. Similarly,

5  Omniangle's reports were provided to a single customer about a single Future Ads

6  advertisement that Omniangle viewed when visiting a particular website. The

7  reports did not comment on ad content, nor about false or misleading marketing.

8  Omniangle cannot convert a private compliance report about a single

9  advertisement into an issue of public interest simply by characterizing it as relating

10  to broad sweeping issues about the ways school advertise.

11       The Congressional report Omniangle cites focuses on representations made in

12  the content of school advertisements. But this lawsuit is not about the content

13  made in advertising representations. It is about Omniangle's defamatory

14  statements that Future Ads' technical ad-delivery system is harmful or violates law.

15  Similarly, the FTC Staff Report that Omniangle cites focuses almost entirely on

16  spyware which is unrelated to Future Ads' claims or Omniangle's compliance

17  reports. Like the union's defamatory statements in *Rivero*, which did not address

18  labor relations in publicly-financed institutions generally, Omniangle's statements

19  are not about substantive advertising representations or any large public concern.

20            **b.   Omniangle's conduct is not a public issue under *Weinberg*.**

21       Omniangle's conduct does not satisfy the *Weinberg* standard either. *Weinberg*

22  identified a test for distinguishing between "issues of public, rather than merely

23  private, interest": (1) "'public interest'" does not equate with mere curiosity"; (2)

24  "a matter of public interest [is] concern[ing] to a substantial number of people [and

25  not just the speaker] and a "relatively small, specific audience"; (3) "the

26  challenged statements and asserted public interest" must be closely related; "the

27  assertion of a broad and amorphous public interest is not sufficient"; and (4) "the

28  focus of the speaker's conduct should be the public interest [at large] … rather

1 than … a private controversy. *Hilton*, 599 F.3d at 906–07 (quoting *Weinberg*, 110

2 Cal. App. 4th at 1132–33) (internal citations and quotation marks omitted).

3     In *Weinberg*, a defendant's private communications about the plaintiff's

4 wrongful activity does not concern a public interest. *See Weinberg*, 110 Cal. App.

5 4th at 1134. There, a defendant token collector told members of his community that

6 the plaintiff had stolen a valuable collector's item. *Id.* at 1127–28. The defendant

7 brought an anti-SLAPP motion after the plaintiff sued for defamation. *Id.* But the

8 defendant's speech did not qualify as "an issue of public interest" even though he

9 claimed to identify a criminal violation. *Id.* at 1134.

10     The defendant claimed that his accusations qualified because criminal activity

11 is always a matter of public interest. *Id.* at 1134. But the Court held that those

12 private accusations did not involve the public interest because the defendant did

13 not report the alleged theft to the public at large or law enforcement. *Id.* at 1126–27.

14     Omniangle did not report Future Ads' alleged potential violations or adware

15 to the public at large or law enforcement. Instead, it privately delivered each

16 statement discrediting Future Ads to a single customer. As in *Weinberg*, this case

17 involves a narrow dispute concerning a "small, specific audience". *See id.* at 1132.

18 The only parties interested in Omniangle's reports are the school receiving a

19 report, lead generators, and Future Ads. The public has no interest in whether

20 Future Ads' service is adware or involves potential violations.

21     Omniangle has the burden of showing its conduct qualifies for anti-SLAPP

22 protection. *Makaeff*, 715 F.3d at 261. Omniangle fails to show a "degree of

23 closeness between" its private compliance reports and the asserted public interest.

24 Omniangle's attempt to tie its specific defamation to the larger question of

25 regulating private universities or online advertisements is precisely "the assertion

26 of a broad and amorphous public interest" that *Weinberg* rejected. *See Weinberg* at

27 1134

28

PL. FUTURE ADS LLC'S RESPONSE TO DEFS.' SPECIAL MOTION TO STRIKE

### 3.   The *New.net* case that Omniangle relies on is inapplicable.

Omniangle's "catchall" public interest analysis relies on superficial similarities between this dispute and *New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004). *New.net* is not binding authority—federal courts applying California's anti-SLAPP law are bound by the California Supreme Court and the state's intermediate courts of appeal. *See Hilton*, 599 F.3d at 905–06.

The conduct at issue in *New.net* involved a matter of public interest because it directly affected millions of consumers. Plaintiff New.net, Inc. surreptitiously bundled its software with other popular programs. *New.net*, 356 F. Supp. 2d at 1096. Defendant Lavasoft was a "public information service" founded "to bring public notice to the fact that unwanted software applications were being downloaded…without the user's knowledge or consent." *Id.* at 1096. Lavasoft offered a free product to the general public identifying suspect applications, including New.net's software, and helped users remove them. *Id.* 19-million consumers downloaded Lavasoft's product. *Id.* at 1103. New.net sued Lavasoft for unfair competition, trade libel, and tortious interference. *Id.* at 1097.

The *New.net* court held that Lavasoft's conduct was protected under the anti-SLAPP statute's "public forum" category, California Civil Procedure Code § 425.16(e)(3). *Id.* at 1108. Specifically, the court found that Lavasoft's publicly-distributed software addressed public interest because: (1) it seeks to "*notify the public* that unwanted software applications were being downloaded to personal computers without the user's knowledge or consent"; (2) relies primarily on information provided *by the public* to Lavasoft through the Internet; and (3) delivers a "service akin to Consumer Reports and other consumer information databases, but in a new form." *Id.* at 1105–06 (emphasis added). None of these criteria have any relevance to Omniangle's conduct.

First, Omniangle's compliance reports are delivered to individual corporate clients—not to millions of consumers. Second, Omniangle's reports are based on

1   its own review of the App, and not information that the public provided. Third,

2   Omniangle provides no service to the public, whether through its compliance

3   reports or otherwise.

4        The public does not discuss Omniangle's compliance reports or their content.

5   Unlike Lavasoft's public-information service and freely available software

6   distributed to millions, Omniangle's reports are private communications relevant

7   only to the single client who received them.

8

### B.   Future Ads' claims have the "minimal merit" required to survive an
9   anti-SLAPP analysis.

10       To survive its burden on the second step in the anti-SLAPP analysis, a plaintiff

11  need only show "minimal merit." *See Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d

12  590, 598 (9th Cir. 2010). Claims have "minimal merit" when they are "'both

13  legally sufficient and supported by a sufficient prima facie showing of facts to

14  sustain a favorable judgment if the evidence submitted by the plaintiff is

15  credited.'" Id. at 599 (quoting *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811,

16  821, 123 Cal. Rptr. 2d 19 (2002)). The court must accept as true all evidence

17  favorable to the plaintiff, and may consider the defendant's evidence only as to

18  whether it "defeats the plaintiff's showing as a matter of law, such as by

19  establishing a defense or the absence of a necessary element." *City of Costa Mesa v.*

20  *D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 375 (2013) (internal citations omitted),

21  review denied, 2013 Cal. LEXIS 4552. The court "does not weigh the credibility or

22  comparative … strength" of each party's evidence, and the plaintiff need not prove

23  his case. *Mindys*, 611 F.3d at 599.

### 1.   Future Ads' defamation and trade libel claims have merit
24  because Omniangle's statements were false and caused Future
25  Ads damages.

26       Defamation requires a "publication to third persons of specified false matter

27  that has a natural tendency to injure or that causes special damage." *Mann v.*

28  *Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 106–07, 15 Cal. Rptr. 3d 215

(2004). Statements are defamation per se when they (i) defame without the need for an explanation (Cal. Civ. Code § 45a), (ii) tend to directly injure the "plaintiff's business by imputing something with reference to the plaintiff's business that has a natural tendency to lessen its profits" (*Mann*, 120 Cal. App. 4th at 107, citing Cal. Civ. Code § 46), or (iii) imply defamatory content without the necessity of knowing extrinsic explanatory matter. *MacLeod v. Tribune Publ'g Co.*, 52 Cal. 2d 536, 548–50 (1959).

Similarly, trade libel occurs when a defendant publishes a false statement that intentionally disparages the quality of property and induces another not to deal with the plaintiff—causing damage. *Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d 543, 548, 216 Cal. Rptr. 252 (1985). The "dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385, 10 Cal. Rptr. 3d 429 (2004).

### a.   Omniangle's statement that Future Ads provides adware is a false assertion of fact that caused harm.

Omniangle's characterizations defamed Future Ads because "adware" is understood to be harmful and malicious software. Expert testimony proves that the overwhelming association of negative-sentiment adjectives with "adware" and the absence of any positive ones establish that people perceive "adware" negatively. *See* Hargraves Decl. at 20. Computer-security experts agree that both the general public and computer professionals view "adware" as a form of malware that is potentially harmful to a computer system. Easttom Decl. ¶ 5. But Future Ads' App is not "adware" because it does not have any of adware's characteristics. *Id.* The App does not surreptitiously monitor or record user computer activity, including key strokes, web use, emails, or other activity, *id.* ¶ 17; is not identified as a virus by standard computer-security software, *id.* ¶ 17; does not surreptitiously transmit data, *id.* ¶ 17; does not affect computer performance, *id.* ¶ 18; does not consume

1  excessive system resources, *id.* ¶ 18; is easy to uninstall, *id.* ¶ 19; and causes

2  absolutely no harm or disruption to the user's system, *id.* ¶ 20.

3      By making the false assertion of fact in its compliance reports that Future Ads

4  provides adware, Omniangle directly injured Future Ads. Omniangle's asserted

5  factual statement has a natural tendency to—and did—lessen Future Ads's profits.

6  Thus, Future Ads' claims for defamation and trade libel have merit.

7

8            **b.  Omniangle's potential-violations characterization implies
            a defamatory fact and not mere opinion.**

9      Omniangle argues that "potential violations" is nonactionable opinion

10  because Omniangle qualifies the term "violations" with the word "potential". The

11  California court of appeal recently looked at this issue in *Bently Reserve LP v.*

12  *Papaliolios,* 2013 Cal. App. LEXIS 601 (2013). The defendant claimed his

13  statements were nonactionable opinion because he qualified them with the word

14  "likely". *Id.* at 1–2, 11. But the court rejected the argument and held "'merely

15  couching an assertion of a defamatory fact in cautionary language such as

16  "apparently" or "some sources say" [does not] … necessarily [defuse] the

17  impression that the speaker is communicating an actual fact.'" *Id.* at 1–2, 11

18  (quoting *Weller v. ABC*, 232 Cal. App. 3d 991, 283 Cal. Rptr. 644 (1991).)

19  Omniangle makes the same argument here, couching its defamatory assertions with

20  "potential". But as in *Bently*, the qualification does not defuse the impression that

21  Omniangle's compliance reports communicate a factual statement.

22      An opinion is defamatory if it could "reasonably be understood as declaring or

23  implying actual facts capable of being proved true or false." *Integrated Healthcare*

24  *Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 527, 44 Cal. Rptr. 3d 517 (2006)

25  (citations and internal quotations omitted). Omniangle's customers would not

26  perceive "potential violations" innocuously when they expect "actionable

27  intelligence" identifying "cyber-security threats in real time." "Potential

28  violations" can reasonably be understood as declaring or implying that legal or

1   cyber-security violations actually exist, which is a fact capable of being proven true

2   or false.

3                    **c.    Future Ads pleaded special damages.**

4        Omniangle argues that Future Ads did not plead special damages. Defamation

5   per se never requires proof of special damages, *Mann*, 120 Cal. App. 4th at 107. But

6   Future Ads pleads defamation per quod in the alternative which, like trade libel,

7   requires special damages. *Fellows v. Nat'l Enquirer*, 42 Cal. 3d 234, 235, 228 Cal.

8   Rptr. 215 (1986). Special damages are "damages to property, business, or

9   occupation." *Id.* Special damages can be proven by identifying particular

10  transactions or customers lost as a result of the defamation. *See Erlich v. Etner*, 224

11  Cal. App. 2d 69, 73–74, 36 Cal. Rptr. 256 (1964). In its complaint, Future Ads

12  pleaded that it lost specific lead-generator advertisers due to Omniangle's

13  defamation. In addition, through declaration Future Ads identifies the customer

14  names and specific lost dollar amounts. *See* Serfontein Decl. ¶¶ 6–18.

15

16              **2.    Actual-malice evidence is not required because Future Ads is**
                       **not a public figure.**

17       Omniangle argues that a plaintiff must prove actual malice when its claim

18  arises from statements that "involve matters of public concern." Defs' Mot. at 12.

19  But Omniangle's cited California Supreme Court decision *expressly rejected* that

20  position. *See Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 747, 257 Cal. Rptr. 708

21  (1989). Instead, the court confirmed actual malice is not required for a public

22  interest where a public figure is not at issue:

23           A public-interest privilege under section 47(3) would impose a malice

24           requirement on private persons that would be contrary to the

25           overwhelming weight of authority from other states…We decline to

26           diverge from the near unanimous authority that a private person need

27           prove only negligence (rather than malice) to recover for defamation.

28  *Id.* at 740–42. Future Ads is not a public figure and need not prove actual malice.

**3.    Future Ads' intentional interference with contractual relations and prospective economic advantage claims have merit because Omniangle interfered with specific business relationships.**

Intentional interference with contractual relations or prospective economic advantage occurs when the defendant disrupts or diverts a business relationship by improper methods outside the boundaries of fair competition. *Baldwin v. Marina City Props., Inc.*, 79 Cal. App. 3d 393, 406, 145 Cal. Rptr. 406 (1978). For example, an intentional-interference claim exists when a defendant's advice to a third party causes the plaintiff harm. *See, e.g., Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 828, 102 Cal. Rptr. 2d 562 (2001) (permitting plaintiff medical management companies to proceed with tortious-interference claims against defendant insurance carriers which had advised other insurance carriers not to pay plaintiffs' claims).

Omniangle's advice to schools disrupted Future Ads' relationships with lead generators. Future Ads identified particular customers who stopped or materially decreased their business with Future Ads after schools received Omniangle's reports. *See* Serfontein Decl. ¶¶ 6–18. Omniangle's advice was improper. Omniangle's reports suggest that using Future Ads' App is a violation of some law or regulation, a cyber-security threat, or may harm a computer. Since these statements are false and caused Future Ads to lose customers, Omniangle tortiously interfered with Future Ads' business.

The cases Omniangle relies upon are irrelevant because they involve a plaintiff that failed to identify any contract or relationship that was disrupted, instead relying only on general statements. Defs' Mot. at 15–18. Future Ads, by contrast, identifies particular lead generators who "instruct[ed] Future Ads to stop running ads" due to Omniangle's interference. Compl. ¶¶ 48, 53; *See also* Serfontein Decl. ¶¶ 6–18.

### 4. Future Ads' unfair-competition claim has merit because Omniangle engaged in unlawful and unfair business practices.

Unfair competition is "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal Bus & Prof Code § 17200. This cause of action: (1) extends to all unfair and deceptive business practices, (2) does not require the plaintiff to prove damage as a result of the defendant's actions, and (3) does not require the plaintiff to prove any competition or rivalry with the defendant. *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1105, 53 Cal. Rptr. 2d 229 (1996); *see Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d 538 (1992); *Bronco Wine Co. v. Frank A. Logoluso Farms*, 214 Cal. App. 3d 699, 704, 262 Cal. Rptr. 899 (1989); *see also Duncan v. Stuetzle*, 76 F.3d 1480 (9th Cir. 1996). An unfair practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, or unscrupulous. *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 58 Cal. Rptr. 2d 89 (1996).

Omniangle is engaged in unlawful activity—the unauthorized practice of law—under California Business & Professions Code § 6125. Omniangle passes itself off as an expert in "compliance" with both state and federal regulations creating the appearance it is providing value to its customers. Compl. ¶¶ 32–33. But by falsely identifying "potential violations" in order to sell its advice, Omniangle engaged in unfair and deceptive business practices. The "compliance" advice that Omniangle provides its customers is defamatory, unethical, and unscrupulous—and thus constitutes a violation of California's unfair competition law.

PL. FUTURE ADS LLC'S RESPONSE TO DEFS.' SPECIAL MOTION TO STRIKE

1
2

### C. The Court should deny Omniangle's alternative motion to dismiss because Future Ads properly stated its claims.

3   When ruling on a Rule 12(b)(6) motion to dismiss, the court must construe the
4   complaint "in the light most favorable to the plaintiff." *Broam v. Bogan*, 320 F.3d
5   1023, 1028 (9th Cir. 2003). A complaint need only state "enough fact[s] to raise a
6   reasonable expectation that discovery will reveal evidence of [the misconduct
7   alleged]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed.
8   2d 929 (2007). A complaint must be "plausible on its face" but need not contain
9   "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S. Ct.
10  1937, 173 L. Ed. 2d 868 (2009). Future Ads has pleaded each of the elements of
11  each claim, and it is plausible that Future Ads will ultimately prove its case.

12  Alternatively, Rule 15(a) provides "[t]he court should freely give leave [to
13  amend] when justice so requires" and the Ninth Circuit requires that courts apply
14  this policy with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893
15  F.2d 1074, 1079 (9th Cir. 1990). Similarly, the Ninth Circuit has held that a court
16  should not grant an anti-SLAPP motion without allowing the plaintiff leave to
17  amend because doing so would directly collide with the federal policy favoring
18  liberal amendment. *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091
19  (9th Cir. 2004). As such, if the Court is inclined to grant Omniangle's anti-SLAPP
20  motion, it should first give Future Ads the opportunity to cure. *See id.* at 1091
21  (acknowledging that this may give plaintiffs "one free shot at a SLAPP suit before
22  amending the complaint" but noting that such a concern is immaterial because of
23  the anti-SLAPP statute's direct conflict with the federal rules). If the Court
24  requires, Future Ads can provide more detail in its pleading about precise damages
25  and additional facts giving rise to its claims.

26
27
28

PL. FUTURE ADS LLC'S RESPONSE TO DEFS.' SPECIAL MOTION TO STRIKE

### D. The Court should allow Future Ads to conduct discovery if the Court is not prepared to deny the motion on the current record.

Future Ads requests discovery if the Court is not prepared to deny Omniangle's motion. The "discovery-limiting aspects" of the anti-SLAPP statute do not apply in federal court because they collide with Rule 56. *Metabolife International, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001). And "the Supreme Court has restated [Rule 56] as requiring, rather than merely permitting, discovery where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Metabolife*, 264 F.3d at 846 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). If the Court does not deny the motion, the Court should permit Future Ads to take discovery under Rule 56.

### V. Conclusion

The anti-SLAPP statute does not protect Omniangle's reports because they were not a matter of public concern. Omniangle provided them to individual clients about a single advertisement, and the conduct did not relate to any broad public issue. Future Ads business' is not a matter of public concern, and Future Ads does not contribute to any advertising content.

Future Ads is not suing Omniangle for its views on education, online advertising in general, or even adware specifically. Rather, Future Ads is suing Omniangle because it told specific schools that Future Ads' service is adware and that schools who advertise via Future Ads' service risk committing potential violations of unspecified state and federal rules and regulations, and cyber-security threats. The Court should not permit Omniangle to hide behind the anti-SLAPP statute and continue to harm Future Ads.

Future Ads has properly pleaded and provided evidence to support its claims. Whether the characterizations "adware" or "potential violation" are true, false, or opinion are factual issues that are not appropriate for resolution on this motion.

1  The Court should deny Omniangle's motion.

2

3  Dated this 19th day of August, 2013.

4

5                                    Respectfully Submitted,

                                     NEWMAN DU WORS LLP
6

7              By:   s/ Derek A. Newman
                     Derek A. Newman, State Bar No. 190467
8                    *derek@newmanlaw.com*
                     Derek Linke, *pro hac vice*
9                    *linke@newmanlaw.com*

10                   Attorneys for Plaintiff
                     FUTURE ADS LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL. FUTURE ADS LLC'S RESPONSE TO DEFS.' SPECIAL MOTION TO STRIKE